[851 NYS2d 218]

In the Matter of Rebecca Felice et al., Respondents, v Eastport/South Manor Central School District, Appellant.

Second Department, January 29, 2008

## APPEARANCES OF COUNSEL

*Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger,* Uniondale (*Gregory A. Cascino* of counsel), for appellant.

*The Law Offices of Amideo Nicholas Guzzone & Associates, P.C.,* Centereach (*Sara A. Toler* of counsel), for respondents.

### OPINION OF THE COURT

CRANE, J.P.

An injured person who has failed to serve a timely notice of claim may, pursuant to General Municipal Law § 50-e (5), apply for permission to serve a late notice. Among the "facts and circumstances" a court must consider in determining an application for permission to serve a late notice of claim are the actual knowledge of the public corporation of the "essential facts constituting the claim" and the prejudice to the public corporation from a claimant's failure to serve a timely notice of claim (General Municipal Law § 50-e [5]). Here, we take the opportunity to clarify the standards relevant to the courts' exercise of discretion in deciding these applications, so the outcomes are more predictable and not merely the product of judicial whimsy. More precisely, we grapple with the distinction between, on the one hand, the knowledge obtained by a public corporation [including a school district] (*see* General Municipal Law § 50-e [1] [a]; General Construction Law § 66 [1]-[4]) of the "essential facts constituting the claim," and, on the other, the knowledge obtained by a public corporation of facts about an accident and the resulting injury that do not amount to the essential facts constituting the claim. We also analyze the effect of this distinction in determining whether the lack of a timely notice of claim has substantially prejudiced a public corporation in its ability to defend the claim on the merits.

### I.

On December 14, 2005, Rebecca Felice, then a tenth-grade student at Eastport/South Manor Central Junior/Senior High School, allegedly was injured during a varsity cheerleading practice at the gym of a local elementary school. Felice was

taken by ambulance to a hospital where she was diagnosed with a fracture of the talus bone in her right foot. The next day Kathryn Orlando, the varsity cheerleading coach, completed a portion of a student accident claim form. According to that portion of the form, Felice "was dismounting in a vertical position from an extended stunt and landed awkwardly on her right foot." Immediately below this narrative, in what appears to be different handwriting—and obviously, from the information contained on it, added at least a few days later—the following appears: "She broke her tallus [sic] bone in the foot and required 2 screws in surgery after accident."

A few days after the accident, Felice was examined by Dr. David Wallach at Stony Brook Hospital; Dr. Wallach informed Felice and her mother that the fracture was displaced and required internal fixation surgery. Dr. Wallach performed the surgery within a week after the accident. Felice's right foot was placed in a cast, and Felice used a wheelchair for two weeks and crutches for almost three months.

An insurance plan provided by the Eastport/South Manor Central School District (hereafter the District) afforded excess medical benefits to its students for accidental bodily injuries suffered during school activities. On December 30, 2005, Felice's mother completed the student accident insurance claim form, part of which had already been completed by Coach Orlando on the day after the accident. The District admits that it had notice of the accident itself, but not of the legal claims Felice and her mother (hereinafter together the petitioners) are alleging.

On July 19, 2006, Felice returned to Dr. Wallach, who had been monitoring her condition, and Dr. Wallach explained to the petitioners that there was a 10% chance that Felice would have problems with the blood flow to her injured foot, and that she may need future surgeries. He also told the petitioners that, while Felice need not "walk on egg shells the rest of [her] life, [she] need[ed] to think about what [she does] to put pressure on the right foot." The record is not clear whether Dr. Wallach told Felice that she could not return to cheerleading, or whether the petitioners merely reached that conclusion on their own from what Dr. Wallach told them. The petitioners retained counsel the same day.

On July 26, 2006, the petitioners commenced this proceeding for leave to serve a late notice of claim against the District and to deem timely served nunc pro tunc the proposed notice of claim annexed thereto.

This proposed notice of claim asserted, under the section entitled "The Nature of the Claim," that the District

"was negligent, careless and reckless in its sponsorship, operation, organization, supervision and control of a varsity cheerleading program/team consisting of students from EASTPORT/SOUTH MANOR JR./SR. HIGH SCHOOL in that Coach KATHERINE ORLANDO, failed to properly and adequately train the girls who were designated as a 'basers' [sic]; designated girls of insufficient weight and height to be 'basers'; designated 'basers' of insufficient height and weight to catch their designated 'flyer'; designated girls of insufficient experience to be 'basers'; failed to follow all of the rules, regulations, safety precautions and standards which govern the activity and/or sport of cheerleading and failed to institute her own safety standards when designating, supervising and controlling each group of 'basers' and 'flyers'. . .

"The claimants also allege that prior to the incident which gave rise to this claim, [the District], through its agents and servants, had actual prior notice that the 'basers' designated to catch the infant Claimant REBECCA FELICE, a 'flyer', were of insufficient height, weight and experience to safely catch the Claimant. The infant Claimant REBECCA FELICE, on many occasions prior to the incident orally voiced her concerns and complaint to Coach KATHERINE ORLANDO, who failed to designate more experienced and larger girls to catch the Claimant and failed to heed the Claimant's warnings that the organization and operation of the cheerleading program/team was neglecting safety standards and procedures for the student participants."

Felice averred in an accompanying affidavit that, in the autumn of 2005, Coach Orlando had placed her with a stunt team with which Felice felt uncomfortable:

"The stunt team consists of a 'flyer', a girl who is thrown in the air and three 'basers' who are responsible for the flyer to land safely on the ground. I felt uncomfortable with the stunt team because all of the girls were smaller than me and one of the girls was inexperienced since she had just

come from junior varsity. The girls were having problems during the practices catching me properly. I voiced my concerns to the coach on several occasions and she did nothing about it."

As to the accident itself, Felice stated: "After I had performed my stunt in the air and I was coming down to the ground, the girls in my stunt team failed to hold on to me to make sure that I landed safely on the grounds [*sic*]. Instead, I landed straight down on my right foot."

Felice asserted in her affidavit that she was unaware that there was a time limit for presenting a notice of claim, but also, with some possible inconsistency, that she "initially convinced [her] mother not to file a claim" because she thought she would be returning to the cheerleading team, whose members and coach were her good friends. When she learned of the seriousness of her injury and that she would not be returning to the team, and she considered "all the times" she had told her coach of her discomfort with her stunt team, she concluded that a claim should be presented. Felice's mother supported these contentions in her own affidavit, noting also that she herself was unaware of the requirement of serving a notice of claim. The petitioners argued that, in light of the District's "actual notice of the accident and the particulars concerning how it occurred, . . . [the District] . . . has not suffered any prejudice by this late notice." The District opposed the petition.

In an order dated December 1, 2006, the Supreme Court granted the petition, and permitted the petitioners to serve a late notice of claim. The Supreme Court held that the District received "actual notice of the essential facts underlying petitioner's claims since the injured student was immediately transported by ambulance and treated at the local hospital for her injuries" (*Matter of Felice v Eastport/South Manor Cent. School Dist.*, 2006 NY Slip Op 30346[U] [2006], at *3). The court also held that, "[u]nder such circumstances the 'School District' cannot be substantially prejudiced in its ability to investigate the cause of the incident since School employees were aware that the infant 'Felice' sustained severe injuries while practicing cheerleading on December 15 [*sic*], 2005" (*id.* at *3-4). The court concluded that the petition "must" be granted (*id.* at *4).

The Supreme Court relied on our decisions in *Mahoney v Town of Oyster Bay* (71 AD2d 879 [1979]) and *Matter of Zimmet v Huntington Union Free School Dist.* (*District No. 3*) (187 AD2d 436 [1992]). The first case is inapposite because it did not concern a late notice of claim, but a timely notice containing

two defects; one of the two defects had been waived, and the other was excusable under General Municipal Law § 50-e (6), a subdivision of the statute not implicated in the case at bar. Additionally, the Supreme Court's reliance on *Matter of Zimmet v Huntington Union Free School Dist. (District No. 3)* was misplaced.

## II.

A timely notice of claim must be served upon a school district before an injured person may commence a tort action against the district (*see* Education Law § 3813 [2]; General Municipal Law § 50-i [1]; *Matter of Padovano v Massapequa Union Free School Dist.*, 31 AD3d 563, 564 [2006]).[1] "Timely" means within 90 days after the claim arises (*see* Education Law § 3813 [2]; General Municipal Law § 50-e [1] [a]). The notice of claim requirement[2] (*see generally Bovich v East Meadow Pub. Lib.*, 16 AD3d 11, 16-17 [2005]) is supposed to give public corporations such as school districts an opportunity for timely and efficient investigation of tort claims, as well as to protect them against stale claims (*see Casias v City of New York*, 39 AD3d 681, 682 [2007]; *Matter of Tumm v Town of Eastchester*, 8 AD3d 581, 582 [2004]; *see also Brown v City of New York*, 95 NY2d 389, 392 [2000]).

General Municipal Law § 50-e (5), however, permits courts, as a matter of discretion and upon consideration of all relevant facts and circumstances, to grant permission to claimants to serve late notices of claim. To understand the current status of the law as it pertains to late notices of claim, and its application to the case at bar, it is helpful first to provide its historical context.

The predecessor of the current statute permitting service of a late notice of claim was enacted in 1945 (*see* L 1945, ch 694,

---

**1.** General Municipal Law § 50-e (2) specifies what a notice of claim must contain. Separately specified in that subdivision are "the nature of the claim," and "the time when, the place where and the manner in which the claim arose."

**2.** *See e.g.* Arts and Cultural Affairs Law § 55.23; CPLR 9801; County Law § 52 (1); Court of Claims Act § 10; Education Law § 6280 (a); Mental Hygiene Law § 41.29; Private Housing Finance Law §§ 61-a, 667 (1); Public Authorities Law § 569-a (2), § 587 (1), § 841 (1), § 889 (1), § 913 (1), § 1017 (1), § 1020-y (3), § 1212 (2), § 1276 (2); Second Class Cities Law § 244; Town Law § 67 (1); Transportation Law § 62-a; McKinney's Uncons Laws of NY §§ 6281-a (New York State Urban Development Corporation Act § 31-a [L 1968, ch 174, § 1, as amended]), 6381-a (New York State Project Finance Agency Act § 21-a [L 1975, ch 7, § 2 as amended]), 6392 (a) (2) (L 1984, ch 899, § 8, as amended), § 7107 (L 1950, ch 301, § 7), 7401 (2) (New York City Health and Hospitals Corporation Act § 20 [L 1969, ch 1016, § 1, as amended]).

§ 1). Essentially intended to codify existing decisional law (*see e.g. Murphy v Village of Fort Edward*, 213 NY 397 [1915]), at least with respect to provisions pertaining to infancy (*see Matter of Nori v City of Yonkers*, 274 App Div 545, 547 [1948]), it provided that courts could, in their discretion, grant leave to a claimant to serve a late notice of claim in two basic situations: (1) when the claimant did not serve a timely notice of claim by reason of being an infant or mentally or physically incapacitated, and (2) when the claimant died before expiration of the applicable period (*see* L 1945, ch 694, § 1). Under the 1945 law, the timing requirements for an application for leave to serve a late notice of claim were strict: in no event could it be made more than one year after the event upon which the claim was based,[3] and it could not be made after an action was commenced to enforce the claim (*id.*). The statute was amended in 1959 to add a third situation where courts were permitted to allow a late notice of claim: when the claimant failed to serve a timely notice of claim in justifiable reliance on written settlement representations by an authorized representative of the party against which the claim was made or its insurance carrier (*see* L 1959, ch 814, § 1; *see e.g. Matter of Nori v City of Yonkers*, 274 App Div at 547).

The statute was criticized, over time, for the harsh results arising from its application (*see e.g. Camarella v East Irondequoit Cent. School Bd.*, 34 NY2d 139, 142 [1974]), and unclear provisions, which were likened to a "mousetrap" (*Matter of Murray v City of New York*, 30 NY2d 113, 121 [1972, Breitel, J., concurring]). In *Camarella v East Irondequoit Cent. School Bd.*, which concerned a schoolyard injury to an 11 year old, the notice of claim itself was served only two days after the 90-day limit had expired. The request for leave to serve a late notice of claim, however, was not made until more than one year after the injury, and after an action had already been commenced (that is, the claimant sought permission to serve the barely late notice of claim a significant period of time after he actually served it). In affirming the dismissal of the action, which had already resulted in a verdict favorable to the plaintiff, the Court of Appeals railed against the harshness of the timing provisions and implored the Legislature to amend the statute:

"we cannot but remark that in this case the harsh-

---

**3.** General Municipal Law § 50-e (5) currently provides "[t]he extension shall not exceed the time limited for the commencement of an action by the claimant against the public corporation."

ness of section 50-e is once again laid bare. . . . The need for legislative reconsideration of the harsher aspects of section 50-e is apparent . . . in order that a more equitable balance may be achieved between a public corporation's reasonable need for prompt notification of claims against it and an injured party's interest in just compensation" (34 NY2d at 142-143).

The response to this judicial call for legislative action came in 1976 with a significant rewriting of the statute regarding late notice. In providing for broader judicial discretion, the amendment specified that

"the court shall consider, in particular, whether the public corporation or its attorney or its insurance carrier acquired actual knowledge of the essential facts constituting the claim within the time specified in subdivision one or within a reasonable time thereafter. The court shall also consider all other relevant facts and circumstances, including: whether the claimant was an infant, or mentally or physically incapacitated, or died before the time limited for service of the notice of claim; whether the claimant failed to serve a timely notice of claim by reason of his justifiable reliance upon settlement representations made by an authorized representative of the public corporation or its insurance carrier; whether the claimant in serving a notice of claim made an excusable error concerning the identity of the public corporation against which the claim should be asserted; and whether the delay in serving the notice of claim substantially prejudiced the public corporation in maintaining its defense on the merits" (L 1976, ch 745, § 2).

The memorandum in support of the Assembly bill that formed the basis of the 1976 amendment stated that its rationale was to "give a more equitable balance by breathing greater flexibility into section 50-e without defeating its basic purpose" (Assembly Mem, at 1, Bill Jacket, L 1976, ch 745).

A memorandum by a staff attorney of the Law Revision Commission explained that the amendment would "reflect[ ] a substantial change of policy in respect to applications for leave to file late notices of claim, giving the court greater flexibility in exercising discretion in this area" (Mem of Law Rev Commn, at 35, Bill Jacket, L 1976, ch 745). The memorandum asserted

that when the public corporation, its attorney, or insurance carrier had "timely actual notice of the facts underlying the claim . . . [t]he absolute bar to the assertion of a just claim under these circumstances is harsh and dysfunctional" (*id.* at 37). In light of the understanding that the "only legitimate purpose" of notice of claim statutes is "to protect a public corporation against stale or unwarranted claims and to enable it to investigate the facts surrounding the occurrence on which the claim is based," courts should have discretion to consider actual knowledge (Mem of Law Rev Commn, at 37, Bill Jacket, L 1976, ch 745). While acknowledging that the amendment would liberalize the notice of claim statutes, the memorandum characterized the amendments as "conservative, retaining the basic notice of claim requirements, and liberalizing them only within the framework of existing short statutes of limitations" (Mem of Law Rev Commn, at 49, Bill Jacket, L 1976, ch 745).

In a separate memorandum in support, the Judicial Conference stated that "[t]he purpose of this bill is to follow the suggestion of the Court of Appeals in *Camarella v East Irondequoit Cent. School Board,* 34 N. Y. 2d 139 (1974)" (Mem of Jud Conf, 1976 NY Legis Ann, at 7). The Judicial Conference's memorandum emphasized that the bill was intended to give judges greater flexibility: "It is intended that these remedial amendments will overrule older decisional law which construed rigidly and narrowly the provisions relating to late filing, and will enable the court to construe these provisions liberally to do substantial justice" (*id.* at 9; *see also* Letter of John Amabile, Chairman of Comm on St Legislation, Assn of Bar of City of NY, June 2, 1976, at 1, Bill Jacket, L 1976, ch 745).

Others, while supporting the bill, would have gone further and abolished notice of claim requirements entirely (*see* Mem of Rosemary S. Pooler, Chairwoman and Exec Director, NY St Consumer Protection Bd, May 26, 1976, at 2, Bill Jacket, L 1976, ch 745 ["We believe, in short, that notice of claim statutes are an anachronistic extension of the doctrine of sovereign immunity, serving no useful purpose, and that it would be in the best interests of the state and its citizens to eliminate them altogether"]).

The opponents of the bill did not disagree as to its purpose. For example, in a letter to the Governor expressing its disapproval of the bill, the Association of Towns of the State of New York stated that the extant provisions of General Municipal Law § 50-e (5) were *"essential"* and should not be "liberal-

ize[d]" (Letter of William K. Sanford, June 4, 1976, at 5, 7, Bill Jacket, L 1976, ch 745). Similarly, the Secretary of State, in urging the Governor to disapprove the bill, predicted that its "practical effect" would be the "abolition of the notice [of claim requirement]" (*see* Letter of Honorable Mario M. Cuomo, July 6, 1976, at 4, Bill Jacket, L 1976, ch 745). The Mayor of the City of New York objected to the proposed standards applicable to the courts' discretion: "No definite reasons need be given, only various uncertain standards need be considered by the Court in extending the time to serve a notice" (Letter of Honorable Abraham D. Beame, June 3, 1976, at 4, Bill Jacket, L 1976, ch 745).

The Legislature nonetheless passed the amendments in the language quoted above, thereby significantly broadening judicial discretion to permit service of late notices of claims, and the Legislature has not amended those provisions since.[4]

As the amended statute makes clear, no factor is determinative, but one, which was absent from the 1945 law, is set apart from all others, specifically "whether the public corporation or its attorney or its insurance carrier acquired actual knowledge of the essential facts constituting the claim within the time specified in subdivision one [within 90 days after the claim arose] or within a reasonable time thereafter" (General Municipal Law § 50-e [5]; *see Casias v City of New York*, 39 AD3d at 682; *see e.g. Matter of Economou v New York City Health & Hosps. Corp.*, 47 AD2d 877, 878 [1975, Murphy, J., dissenting]). The remaining factors are included within "all other relevant facts and circumstances." The Court of Appeals has pointed out that the enumerated list is "nonexhaustive" (*Williams v Nassau County Med. Ctr.*, 6 NY3d 531, 539 [2006]).

The first factor, we believe, is the most important, based on its placement in the statute and its relation to other relevant factors (*cf. Matter of Battle v City of New York*, 261 AD2d 614, 615 [1999] [giving "great weight" to that factor]). We have consistently held that a public corporation's knowledge of the accident and the injury, without more, does not constitute "actual knowledge of the essential facts constituting the claim" (General Municipal Law § 50-e [5]; *see Weber v County of Suffolk*, 208 AD2d 527, 528 [1994]), at least where the incident and the injury do not necessarily occur only as the result of fault for

---

4. In its substantive language, Education Law § 3813 (2-a) tracks the language of General Municipal Law § 50-e (5). Other statutes expressly incorporate the provisions of General Municipal Law § 50-e (*see e.g.* Public Authorities Law § 1276 [2]).

which it may be liable. In order to have actual knowledge of the essential facts constituting the claim, the public corporation must have knowledge of the facts that underlie the legal theory or theories on which liability is predicated in the notice of claim; the public corporation need not have specific notice of the theory or theories themselves.

For example, in *Matter of Scolo v Central Islip Union Free School Dist.* (40 AD3d 1104 [2007]) the infant petitioner, a first-grade student, was injured when another student collided with her while she was trying to pick up a ball. We held that the school district's awareness of these facts did not apprise it of a claim based on the allegedly known violent propensities of the other student. Likewise, in *Matter of Ryder v Garden City School Dist.* (277 AD2d 388 [2000]), a high school football player suffered a broken ankle during practice. We held that the school district's knowledge of the injury, and that it was caused when the petitioner was hit by another player, did not apprise the school district of the claim that school personnel negligently supervised the student players (*see also Bridgeview at Babylon Cove Homeowners Assn., Inc. v Incorporated Vil. of Babylon*, 41 AD3d 404 [2007]; *Matter of Doyle v Elwood Union Free School Dist.*, 39 AD3d 544, 545 [2007]; *Matter of Scott v Huntington Union Free School Dist.*, 29 AD3d 1010, 1011 [2006]; *Conte v Valley Stream Cent. High School Dist.*, 23 AD3d 328 [2005]; *Matter of del Carmen v Brentwood Union Free School Dist.*, 7 AD3d 620, 621 [2004]; *Matter of Conroy v Smithtown Cent. School Dist.*, 3 AD3d 492, 493 [2004]; *Matter of Price v Board of Educ. of City of Yonkers*, 300 AD2d 310, 311 [2002]; *Matter of Sheff v County of Westchester*, 279 AD2d 632 [2001]; *Matter of Guiliano v Town of Oyster Bay*, 244 AD2d 408, 409 [1997]; *Matter of Dunlea v Mahopac Cent. School Dist.*, 232 AD2d 558, 559-560 [1996]; *Matter of Leiblein v Clark*, 207 AD2d 348 [1994]; *Matter of Hubbard v City School Dist. of Glen Cove*, 204 AD2d 721, 721-722 [1994]; *accord Matter of Green v New York City Hous. Auth.*, 180 AD2d 586 [1992]).

By contrast, in other cases the public corporation has been held to have had actual knowledge of the essential facts constituting the claim (*see e.g. Jordan v City of New York*, 41 AD3d 658 [2007] [passengers in a car involved in an accident had already served timely notices of claim]; *Matter of Apgar v Waverly Cent. School Dist.*, 36 AD3d 1113, 1114 [2007] [principal of school was aware of the accident and injury and of the fact that, shortly before the accident, a playground monitor had

cautioned children on a slide to leave an adequate interval to avoid collision]; *Gibbs v City of New York*, 22 AD3d 717 [2005] [records contained a plaintiff's allegation that she was hurt when an ambulance in which she was a passenger braked, and a wheelchair slid forward]; *Matter of Edwards v City of New York*, 2 AD3d 110 [2003] [Sanitation Department had records establishing that it knew that the claimant had been exposed to asbestos]; *Matter of Battle v City of New York*, 261 AD2d 614, 615 [1999] [City's own employees were involved in remedying the violations cited]).

In medical malpractice cases, when the medical records themselves contain facts that detail both the procedures used and the claimant's injuries, and suggest that the relevant public corporation may be responsible for those injuries, the public corporation will be held to have had actual knowledge of the essential facts constituting the claim (*compare Greene v New York City Health & Hosps. Corp.*, 35 AD3d 206, 207 [2006]; *Matter of Staley v Piper*, 285 AD2d 601, 603 [2001]; *Matter of Robinson v Westchester County Med. Ctr.*, 270 AD2d 275 [2000]; *Matter of Matarrese v New York City Health & Hosps. Corp.*, 215 AD2d 7, 16 [1995]; *Matter of Tomlinson v New York City Health & Hosps. Corp.*, 190 AD2d 806, 806-807 [1993], *and Matter of Quiroz v City of New York*, 154 AD2d 315, 316 [1989], *with Williams v Nassau County Med. Ctr.*, 6 NY3d 531, 537 [2006]; *Matter of King v New York City Health & Hosps. Corp.*, 42 AD3d 499, 500-501 [2007], *and Lucero v New York City Health & Hosps. Corp. [Elmhurst Hosp. Ctr.]*, 33 AD3d 977, 978-979 [2006]; *cf. Pearson v New York City Health & Hosps. Corp. [Harlem Hosp. Ctr.]*, 43 AD3d 92, 94 [2007]).

These requirements are consistent with General Municipal Law § 50-e (2), which dictates the content of a notice of claim in the first place. As noted previously (supra n 1), a notice of claim must contain not only "the time when, the place where and the manner in which the claim arose," but also "the nature of the claim" (General Municipal Law § 50-e [2]). Thus, it makes sense to regard the term "essential facts constituting the claim," as set forth in subdivision (5) of General Municipal Law § 50-e, as including those facts that reveal the nature of the claim.

## III.

General Municipal Law § 50-e (5) and the precedents construing it compel us to conclude that the District's admitted knowledge of the accident and the injury to Felice did not amount to

actual knowledge of the essential facts constituting her claim. Nowhere in the injury report is there any recitation or allegation that the "basers" were either too small to catch a "flyer" such as Felice, or that Felice had made known to the coach her dissatisfaction with the team members assigned as "basers" (*cf. Matter of Messere v Fink*, 240 AD2d 811, 812 [1997]).[5] Thus, we conclude that the District's lack of actual notice of such facts precludes a finding that it was "actual[ly] [aware] of the essential facts constituting the claim."

General Municipal Law § 50-e (5), however, does not permit us to end our analysis here (*see Matter of McHugh v City of New York*, 293 AD2d 478 [2002]; *Matter of DeMolfetto v City of New York*, 216 AD2d 295, 296 [1995]). We next consider whether the petitioners had a reasonable excuse for not serving a timely notice of claim. The statute does not expressly enumerate this factor. All relevant factors and circumstances must be considered, and, in numerous cases construing the statute, courts have considered whether the claimant had a reasonable excuse for not serving a timely notice (*see Bridgeview at Babylon Cove Homeowners Assn., Inc. v Incorporated Vil. of Babylon*, 41 AD3d 404 [2007]; *Casias v City of New York*, 39 AD3d 681, 683 [2007]; *Matter of Corvera v Nassau County Health Care Corp.*, 38 AD3d 775, 776-777 [2007]; *Matter of Narcisse v Incorporated Vil. of Cent. Islip*, 36 AD3d 920, 921-922 [2007]; *Matter of Carpenter v City of New York*, 30 AD3d 594, 595 [2006]; *De Jesus v County of Albany*, 267 AD2d 649, 651 [1999]).

The petitioners' excuses for their delay, which was in excess of seven months after the accident and four months after the expiration of the 90 days in which to serve a notice of claim, are not reasonable. First, a claimant's ignorance of the notice of claim requirement is not an acceptable excuse (*see Matter of Pico v City of New York*, 8 AD3d 287, 288 [2004]; *Matter of*

---

**5.** The petitioners did not argue before the Supreme Court, and do not argue before us, that in light of the allegation that Felice complained to her coach, the District had actual knowledge of the essential facts constituting the claim. Indeed, the petitioners concede that they did not specifically alert the District, within the relevant 90-day period, that negligent supervision and control of the stunt team caused or contributed to the accident (brief of petitioners-respondents at 9). Thus, we do not consider Felice's alleged prior complaints to her coach on the issue of actual knowledge. In any event, the Supreme Court did not rule on this allegation, base its grant of the petition on it, or otherwise address the alleged prior complaints about the "basers." Nor did the petitioners argue that the coach was present when the accident occurred, or that she witnessed it, and we express no opinion as to whether the coach's presence would change the outcome of this proceeding.

*Termini v Valley Stream Union Free School Dist. No. 13*, 2 AD3d 866 [2003]; *Matter of Bollerman v New York City School Constr. Auth.*, 247 AD2d 469, 470 [1998]). Second, the petitioners' excuse that they were unaware of the severity of Felice's injury is unavailing without supporting medical evidence explaining why the possible permanent effects of the injury took so long to become apparent and be diagnosed (*see Matter of Lodati v City of New York*, 303 AD2d 406, 407 [2003]; *Matter of Eaddy v County of Nassau*, 282 AD2d 675 [2001]; *Lefkowitz v City of New York*, 272 AD2d 56 [2000]; *Matter of Plantin v New York City Hous. Auth.*, 203 AD2d 579, 580 [1994]; *cf. Matter of Hursala v Seaford Middle School*, 46 AD3d 892, 893 [2007]). Third, if the injuries were "sufficiently serious" to warrant the District's thorough investigation (*Matter of De Groff v Bethlehem Cent. School Dist.*, 92 AD2d 702, 702 [1983]), the petitioners do not explain why they themselves did not perceive them to be "sufficiently serious" to cause them to serve a timely notice of claim.

Next, we consider another statutory factor, somewhat related to whether the petitioners had a reasonable excuse, namely, whether the claimant was an infant. Here, Felice was an infant. But, while it is not necessary that the infancy of a claimant be the reason for the late notice—the 1976 amendments deleted that requirement—lack of the connection between infancy and the service of a late notice is a factor militating against leave; "[i]t all goes into the mix" (*Williams v Nassau County Med. Ctr.*, 6 NY3d at 538; *see Matter of Plantin v New York City Hous. Auth.*, 203 AD2d 579 [1994]).

There is no evidence in the record that Felice's infancy made it more difficult to diagnose the possible permanence of her injury (*cf. Pearson v New York City Health & Hosps. Corp. [Harlem Hosp. Ctr.]*, 43 AD3d at 94; *Matter of Tetro v Plainview-Old Bethpage Cent. School Dist.*, 99 AD2d 814 [1984]). And there is, at best, only a slight connection between Felice's infancy and the failure to serve a timely notice on her behalf. As the petitioners concede, they deliberately delayed their presentation of a claim because Felice did not want to involve her coach and the other cheerleaders, who were her friends, since she expected to return to the team (*see Doukas v East Meadow Union Free School Dist.*, 187 AD2d 552, 553 [1992]; *cf. Matter of Andrew T.B. v Brewster Cent. School Dist.*, 18 AD3d 745, 747 [2005]). Felice's mother was not an infant, in any event, so Felice's infancy cannot be the basis for excusing the tardiness of the

mother's derivative claim (*see Matter of Andrew T.B. v Brewster Cent. School Dist.*, 18 AD3d 745 [2005]; *Tanco v New York City Hous. Auth.*, 84 AD2d 501 [1981]; *cf. Vaynman v Maimonides Med. Ctr.*, 4 AD3d 414, 416 [2004]).[6]

Finally, a claimant seeking leave to serve a late notice of claim pursuant to General Municipal Law § 50-e (5) bears the burden of showing that the delay will not substantially prejudice the public corporation in maintaining its defense on the merits (*see Jordan v City of New York*, 41 AD3d 658 [2007]; *Matter of Dumancela v New York City Health & Hosps. Corp.*, 32 AD3d 515, 516 [2006]; *Breeden v Valentino*, 19 AD3d 527, 528 [2005]). It makes sense that the burden of establishing the lack of prejudice be placed on the claimant, who, after all, is seeking to excuse his or her failure to comply with the statute. Of course, when the public corporation has actual knowledge of the facts constituting the claim, it may be easier for a claimant to meet this burden (*see Gibbs v City of New York*, 22 AD3d 717, 719 [2005]). Indeed, the Court of Appeals has recently observed that "proof that the defendant had actual knowledge is an important factor in determining whether the defendant is substantially prejudiced by such a delay" (*Williams v Nassau County Med. Ctr.*, 6 NY3d at 539; *see Jordan v City of New York*, 41 AD3d 658 [2007]; *Matter of Vasquez v City of Newburgh*, 35 AD3d 621, 623 [2006]; *Rechenberger v Nassau County Med. Ctr.*, 112 AD2d 150, 153 [1985]). Thus, for example, in *Jordan v City of New York*, which concerned a car accident, the claimant, the driver, was able to establish that the City had actual knowledge of the essential facts constituting the claim because the passengers in his car had served timely notices of claim. A fortiori, the City was not prejudiced by his delay in serving a timely notice of claim (*see Jordan v City of New York*, 41 AD3d 658 [2007]).

Even where the public corporation does not have actual knowledge of the essential facts constituting the claim, it may in some cases not be difficult for the claimant to establish the absence of material prejudice. Certainly, in this case, the eyewitnesses to the event are known—other members of the stunt team, and perhaps other members of the larger cheerleading team as well—and the District will likely be able to interview them. With respect to some aspects of the claim, specifically whether Felice complained to her coach before the accident about the composition of the stunt team, the District would

---

**6.** While the mother appears as a claimant on the notice of claim, that notice contains no independent claim for the mother.

likely not be prejudiced. Thus, the petitioners have shown that the delay has not substantially prejudiced the District in that respect at least.

We conclude, however, that the petitioners have not established that the District was not substantially prejudiced by the delay in other respects. At the point the District received the petition seeking permission to serve a late notice of claim, it may already have been prejudiced with respect to investigating whether, and to what degree, the alleged inexperience of the "basers," as opposed merely to the risks inherent in the modern style of cheerleading,[7] caused or contributed to Felice's injuries. Witnesses' memories of the precise manner in which Felice fell, and whether the accident was caused by any deficiencies in the "basers," may already have faded in the more-than 180 days between the date of the accident and the date this proceeding was commenced.

Even if, however, the petitioners established that the District was not prejudiced, we find that the balance of relevant factors militates against granting the petition. In light of our consideration of all of the relevant factors and circumstances, most especially the District's lack of actual knowledge of the essential facts constituting the petitioners' claim and the petitioners' lack of a reasonable excuse for failing to serve a timely notice of claim, we conclude that the Supreme Court improvidently exercised its discretion in granting the petition to serve a late notice of claim.

## IV.

Having in mind the history of General Municipal Law § 50-e (5) and its application to the facts of the case, we are now equipped to demonstrate why, in reaching a contrary conclusion, the Supreme Court's reliance on *Matter of Zimmet v Huntington Union Free School Dist. (District No. 3)* (187 AD2d 436 [1992]) was misplaced. In *Zimmet,* we held that a school district was aware of the accident itself and that the injury, a fractured wrist, was serious enough to have "alerted respondent to the advisability of undertaking a thorough investigation of the incident" (*Matter of Zimmet v Huntington Union Free School Dist. [District No. 3],* 187 AD2d at 436, quoting *Matter of*

---

**7.** *See* Pennington, *As Cheerleaders Soar Higher, So Do the Risks,* New York Times, Mar. 31, 2007, section A, at 1; Brenda J. Shields and Gary A. Smith, *Cheerleading-Related Injuries to Children 5 to 18 Years of Age: United States, 1990-2002,* 117 Pediatrics 122-123 (Jan. 2006).

*De Groff v Bethlehem Cent. School Dist.*, 92 AD2d 702 [1983]). We did not specify which aspect of the late-notice statute these circumstances implicated. The Supreme Court, however, read *Matter of Zimmet v Huntington Union Free School Dist. (District No. 3)*, as support for its conclusion that the District's knowledge of Felice's injuries alone constituted actual knowledge of the facts underlying the petitioners' claims, and that the District would not be substantially prejudiced in its ability to investigate. This melded the "actual knowledge" and "substantial prejudice" factors and diluted both.

Indeed, the petitioners' argument on appeal relies on the same reasoning. The petitioners concede that they did not "specifically alert the [District] within ninety (90) days, of the specific problems with the organization, supervision and control of . . . the stunt team that caused the incident to occur or the fact that negligent supervision had caused or contributed to the incident" (brief of petitioners-respondents at 9). Instead, they rely on the District's knowledge of the accident and the seriousness of the injury to put the District on notice of the "underlying grounds for a claim" (*id.* at 11-12), for faulting them for not having conducted an investigation, and for arguing that the District was not prejudiced by the delay (*id.* at 9).

In *Matter of De Groff v Bethlehem Cent. School Dist.* (92 AD2d 702, 702 [1983]), the Appellate Division, Third Department, determined that a school district was aware of the collision between a bicycle and a school bus when it happened, and thus held that the injuries were "sufficiently serious to have alerted respondent to the advisability of undertaking a thorough investigation of the incident." The Third Department likewise failed to specify the statutory significance of the school district's knowledge of the seriousness of the injuries. In several cases since *De Groff*, we, and other departments of the Appellate Division, have concluded that a public corporation's awareness of an accident, coupled with the seriousness of the claimant's injury, were sufficient to forgive a late notice of claim (*see e.g. Bovich v East Meadow Pub. Lib.*, 16 AD3d 11, 20 [2005] ["the library received contemporaneous actual notice of the facts underlying the plaintiff('s) claim, and that her injuries were sufficiently serious as to warrant an investigation"]; *see also Matter of Bird v Port Byron Cent. School Dist.*, 231 AD2d 916 [1996]; *Matter of Zimmet v Huntington Union Free School Dist. [District No. 3]*, 187 AD2d 436 [1992]; *Matter of Urban v Waterford-Halfmoon Union Free School Dist.*, 105 AD2d 1022, 1024 [1984]). At the

very least, the decisions in these cases relied in part on the public corporation's knowledge of the accident itself, without noting the statute's enumerated factor of "actual knowledge of the essential facts constituting the claim."

We emphasize that knowledge of the accident itself and the seriousness of the injury does not satisfy this enumerated factor where those facts do not also provide the public corporation with knowledge of the essential facts constituting the claim. A contrary holding would, in effect, rewrite the statute, which, as explained above, was amended to "give a more equitable balance by breathing greater flexibility into section 50-e *without defeating its basic purpose*" (Assembly Mem, at 1, Bill Jacket, L 1976, ch 745 [emphasis added]). By relying on the public corporation's knowledge of the seriousness of the injury in order to put the public corporation on notice to investigate a claim to discover the basis for it, a court transmutes the requirement of "actual knowledge of the essential facts constituting the claim" into actual knowledge of the accident and constructive knowledge of the essential facts constituting the claim. If the statute is to be rewritten again, the Legislature, not the courts, should do it.

For the same reason, it is also problematic to read *Matter of Zimmet v Huntington Union Free School Dist. (District No. 3)*, and the cases relying on it, as an analysis of the prejudice requirement for forgiving tardy notices of claim. A public corporation's knowledge of the accident itself and the seriousness of the injuries does not obviate prejudice merely because that limited knowledge should have alerted the public corporation that it was advisable to conduct a thorough investigation. This again imports into the statute a constructive knowledge aspect that the Legislature did not intend. These cases do not support such a reading, and they were never intended to be applied to distort the language of General Municipal Law § 50-e (5), which requires actual, not merely constructive, knowledge of the facts constituting the claim. Yet, this was the consequence of the Supreme Court's reliance on *Matter of Zimmet v Huntington Union Free School Dist. (District No. 3)* in granting the petitioners' application here.

Accordingly, the order is reversed, on the law and as a matter of discretion, and the petition for leave to serve a late notice of claim is denied.

SANTUCCI, FLORIO, DILLON and BALKIN, JJ., concur.

Ordered that the order is reversed, on the law and as a matter of discretion, with costs, and the petition for leave to serve a late notice of claim is denied.