[909 NYS2d 866]

NEW YORK RACING ASSOCIATION et al., Plaintiffs, v NASSAU REGIONAL OFF-TRACK BETTING CORPORATION et al., Defendants.

Supreme Court, Nassau County, July 29, 2010

APPEARANCES OF COUNSEL

*Blank Rome LLP*, New York City, for Nassau Regional Off-Track Betting Corporation and another, defendants. *Greenberg Traurig*, New York City, for Scientific Games LLC, defendant. *Bee, Ready, Fishbein, Hatter & Donovan LLP*, Mineola, for plaintiffs.

## OPINION OF THE COURT

STEPHEN A. BUCARIA, J.

Motion by defendants Nassau Regional Off-Track Betting Corporation (NROTB) and Dino Amoroso pursuant to CPLR 3211 to dismiss the first through fourth causes of action of the complaint is granted in part and denied in part.

In this action commenced on October 27, 2009, plaintiff, the New York Racing Association (NYRA), and its president, Charles Hayward, seek to recover for the unauthorized live transmissions of audio-visual simulcasts of NYRA races on NROTB's Web site during the 53-day period from January 29 to April 15, 2009. Plaintiffs seek to recover from defendant NROTB, defendant Scientific Games Racing which allegedly provided NROTB with, inter alia, technological services including software and hardware for its Internet Web site, and defendant Roberts Communications LLC, which allegedly transmitted live audio-visual race simulcasts, including NYRA's, to NROTB's wagering locations, Nassau County residents' televisions and NROTB's Web site.

In its complaint, NYRA alleges that it operates Aqueduct, Belmont and Saratoga racetracks and that it has proprietary rights and interests in the audio-visual simulcasts of its races there. Therefore, races at those tracks may be displayed only at OTB branches or teletheaters, on television or on the Internet with its permission. It further alleges that in operating NROTB's wagering system in Nassau County, NROTB telecasts live audio-visual simulcasts for pari-mutuel wagering purposes and that it also maintains a Web site which displays them, but only with the racetracks' authorization. NYRA alleges that pursuant to an agreement which was subject to New York State

Racing and Wagering Board approval, it would have allowed NROTB to broadcast races at branches and teletheaters as well as on cable. However, that agreement never received Board approval. In fact, NYRA alleges that NROTB sought its approval to offer live audio-visual simulcasts of its races in March 2008 but it was denied. It further alleges that the agreement does not authorize live audio-visual simulcasts of NYRA's races on NROTB's Web site. It alleges that from January 29, 2009 until April 15, 2009, NROTB nevertheless transmitted live NYRA's audio-visual race simulcasts over its Web site which it obtained from the defendants Scientific Games LLC or Roberts Communications LLC without its authorization. NYRA alleges that as a result, pursuant to written notification dated April 15, 2009, it terminated transmission of its live audio-visual race simulcasts to NROTB home viewers, accompanied by a statement by president Hayward to the effect that NROTB had displayed live audio-visual simulcasts of races on its Web site without NYRA's authorization.

NYRA further alleges that NROTB brought suit against it in June 2009 sounding in breach of contract to recover for the termination of live audio-visual simulcasts of its races on television and for defamation against Hayward based upon his accusatory statement about NROTB. In that action, NROTB alleged that NYRA had in fact agreed to provide in-home live simulcasting to Nassau County cable customers, and by directing Cablevision to block those broadcasts, NYRA breached its agreement with NROTB. As for the live Web site simulcasts, NROTB maintained that it was not even aware of it and that it was done in error by the third-party provider Roberts Communications Network which was hired by its webmaster Scientific Games LLC. It alleged that when it learned of these mistaken simulcasts on its Web site, it put an immediate stop to them. NROTB further alleged that both it and its webmaster Scientific Games LLC informed NYRA that the live Web site simulcasts were totally unintended accidents; that they expressed their regret; and that upon the NYRA president's demand, its president defendant Dino Amoroso supplied two written apologies. NROTB alleged that NYRA nevertheless terminated home broadcasts without first confirming its intent to do so. NROTB additionally alleged that NYRA defamed it by announcing that the televised signal from Belmont Park thoroughbred racing had been removed from NROTB's in-home distribution network because "despite repeated demand, NYRA

ha[d] to date received no satisfactory explanation from NROTB as to why it deliberately pirated NYRA's signal over the internet" and that "NYRA's racing signal is valuable and proprietary and [it could not] allow it to be pirated by [its] competitors in the industry." As and for its first cause of action, NROTB sought specific performance. As and for its second cause of action, NROTB sought damages for breach of contract. As and for its third cause of action, NROTB sought to recover for defamation. NYRA did not interpose any counterclaims in that action.

In this action, NYRA alleges that on July 23, 2009, NROTB's president, defendant Dino Amoroso, told a New York Post reporter that Hayward was "a liar and a thief" and that the Post published that statement on July 24, 2009.

In its first, fifth and eighth causes of action, NYRA seeks to recover of NROTB, Scientific Games LLC and Roberts Communications LLC, respectively, for conversion due to the transmission of live simulcasts of its races on NROTB's Web site.

In its second, sixth and ninth causes of action, NYRA seeks to recover of NROTB, Scientific Games LLC and Roberts Communications LLC, respectively, for unfair competition.

In its third, seventh and tenth causes of action, NYRA seeks to recover of NROTB, Scientific Games LLC and Roberts Communications LLC, respectively for unauthorized publication/use of communications in violation of 47 USC § 605.

In its fourth cause of action, NYRA president Charles Hayward seeks to recover of NROTB and its president, defendant Dino Amoroso, for defamation.

Defendants NROTB and Dino Amoroso move to dismiss the complaint pursuant to CPLR 3211. It is not disputed NYRA failed to file a notice of claim, which NROTB alleges is required by section 514 of the Racing, Pari-Mutuel Wagering and Breeding Law. (*Zoll v Suffolk Regional Off-Track Betting Corp.*, 259 AD2d 696 [2d Dept 1999]; *New York Racing Assn. Inc. v New York City Off-Track Betting Corp.*, 51 AD3d 462 [1st Dept 2008], *lv denied* 12 NY3d 704 [2009], citing *Zoll v New York City Off-Track Betting Corp.*, 258 AD2d 267 [1st Dept 1999]; *see also Matter of Marino v New York City Off-Track Betting Corp.*, 12 AD3d 606 [2d Dept 2004].) Contrary to NYRA's position, that statute's application is not limited to personal injury or property damage claims. The statute provides that "[i]n every action against a corporation for damages" the complaint must contain an allegation that 30 days have elapsed since a notice of claim

was served. (Racing, Pari-Mutuel Wagering and Breeding Law § 514 [1].) Racing, Pari-Mutuel Wagering and Breeding Law § 618 provides that a timely notice of claim must be filed before commencing an action against the New York City Off-Track Betting Corporation.

As the Appellate Division, Second Department, held in *Zoll v Suffolk Regional Off-Track Betting Corp.* (259 AD2d at 696-697), "[i]t is well settled that the service of a notice of claim, the contents of which are statutorily prescribed, is a condition precedent to the commencement of an action against a municipal corporation" (citations omitted). The Court there further specifically held that

"Racing, Pari-Mutuel Wagering and Breeding Law § 514 establishes that the notice of claim requirement applies to *any* action for 'damages', not just tort claims based on injury to personal property, real property, and for personal injuries . . . [That statute] is not subject to any exceptions based on the nature of the underlying legal theory." (259 AD2d at 697 [emphasis added], citing *Quicksilver Assoc. v Catskill Regional Off-Track Betting Corp.*, 213 AD2d 389 [2d Dept 1995]; *Broadmeadow Lanes v Catskill Regional Off-Track Betting Corp.*, 151 AD2d 631 [2d Dept 1989]; *Justy v New York City Off-Track Betting Corp.*, 199 AD2d 190 [1st Dept 1993], *lv denied* 83 NY2d 758 [1994]; *see also New York Racing Assn. Inc. v New York City Off-Track Betting Corp.*, *supra.*)

In its memorandum of law, NYRA requests leave to file a late notice of claim. Neither section 514 nor section 618 contains any provision permitting the service of a late notice of claim. However, contrary to NROTB's position, leave to file a late notice of claim against NROTB is permitted in tort actions pursuant to General Municipal Law § 50-e. (*See Marino v New York City Off-Track Betting Corp.*, 12 AD3d at 607.)

"In determining whether to grant an application for leave to serve a late notice of claim, the key factors which the court must consider are whether the public corporation acquired actual knowledge of the essential facts constituting the claim within 90 days or a reasonable time thereafter, whether the claimant was an infant or mentally or physically incapacitated, whether the claimant had a reasonable excuse for the delay in serving a notice of claim, and

whether the municipality would be substantially prejudiced by the delay in maintaining its defense on the merits." (*Matter of Ambrico v Lynbrook Union Free School Dist.*, 71 AD3d 762, 763 [2d Dept 2010], citing *Matter of Andrew T.B. v Brewster Cent. School Dist.*, 18 AD3d 745, 746 [2005], *Fuentes v County of Nassau*, 15 AD3d 346 [2d Dept 2005], and *Rogers v City of Yonkers*, 271 AD2d 593 [2d Dept 2000].)

"The presence or absence of any one factor is not necessarily determinative." (*Id.* at 763, citing *Matter of Leeds v Port Washington Union Free School Dist.*, 55 AD3d 734 [2d Dept 2008] and *Jordan v City of New York*, 41 AD3d 658, 659 [2d Dept 2007].) But, "whether the municipality timely acquired actual knowledge of the essential facts constituting the claim is a factor which is accorded great weight." (*Id.*, citing *Matter of Brownstein v Incorporated Vil. of Hempstead*, 52 AD3d 507, 509 [2d Dept 2008], *Matter of Felice v Eastport/South Manor Cent. School Dist.*, 50 AD3d 138, 147 [2d Dept 2008], and *Matter of Dell'Italia v Long Is. R.R. Corp.*, 31 AD3d 758, 759 [2d Dept 2006].)

The court concludes that NROTB clearly received actual knowledge of the unauthorized telecasts within a reasonable time after they occurred. Moreover, defendants have not established that they would be substantially prejudiced by defending plaintiffs' claims on the merits. Accordingly, plaintiffs are *granted* leave to serve a late notice of claim. Defendants' motion to dismiss the complaint based upon plaintiffs' failure to serve a timely notice of claim is *denied*.

When deciding a motion to dismiss a complaint pursuant to CPLR 3211, the court is required to afford the pleading "a liberal construction." (*Leon v Martinez*, 84 NY2d 83, 87 [1994].) It must "accept the facts as alleged in the complaint as true, accord [the] plaintiff[ ] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." (*Id.*)

Under the traditional construct of the intentional tort of conversion, plaintiff was required to establish "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights" (*Thyroff v Nationwide Mut. Ins. Co.*, 8 NY3d 283, 288-289 [2007]). In *Thyroff*, the Court of Appeals suggested that plaintiff may maintain an action for conversion where its electronically stored data is misappropriated, regardless of

whether plaintiff has been excluded from access to its intangible property. The Court noted that it is the information which is stored in the computer that has "intrinsic value," rather than the "physical nature" of the document (*id.* at 292). This court concludes that NYRA may maintain an action for conversion of its live audio-visual simulcast, even though it was not "excluded" from access to the electronic data transmission. Defendants' motion to dismiss plaintiffs' conversion claim for failure to state a cause of action is *denied.*

To sustain a cause of action sounding in unfair competition, "the plaintiff must show that the defendants misappropriated [its product], labors, skills, expenditures, or good will and displayed some element of bad faith in doing so." (*Abe's Rooms, Inc. v Space Hunters, Inc.*, 38 AD3d 690, 692-693 [2d Dept 2007].) "The tort functions to protect 'property rights of commercial value . . . from any form of commercial immorality.' " (*Bongo Apparel, Inc. v Iconix Brand Group, Inc.*, 18 Misc 3d 1108[A], 2008 NY Slip Op 50000[U], *13 [Sup Ct, NY County 2008], quoting *Metropolitan Opera Assn., Inc. v Wagner-Nichols Recorder Corp.*, 199 Misc 786, 796 [Sup Ct, NY County 1950], *affd* 279 App Div 632 [1st Dept 1951].) " 'The general principle . . . evolved from all of the cases is that commercial unfairness will be restrained when it appears that there has been a misappropriation, for the commercial advantage of one [company], of a benefit or property right belonging to another.' " (*Telecom Intl. Am., Ltd. v AT & T Corp.*, 280 F3d 175, 197 [2d Cir 2001].)

■ NYRA alleges that NROTB misappropriated live audio-visual simulcasts of its races and participated in their transmission over NROTB's Web site despite knowing that it lacked authorization to do so. Applying the standards of review applicable to a motion pursuant to CPLR 3211 (a) (7), NYRA has adequately pleaded a claim sounding in unfair competition. Defendants' motion to dismiss plaintiffs' claim of unfair competition for failure to state a cause of action is denied.

■ 47 USC § 605 (a) (Communications Act of 1934) provides

> "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information

therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

Since section 605 refers to "radio communications," it applies to communications traveling "through the air," as opposed to "communications by wire," which are covered by 47 USC § 553 (*Charter Communications Entertainment I, DST v Burdulis*, 460 F3d 168, 172-173 [1st Cir 2006]). Giving plaintiff the benefit of every possible favorable inference, the court must assume that the audio-visual simulcasts were transmitted wirelessly, at least in part. Thus, NYRA has stated a legally sufficient claim under 47 USC § 605. Defendants' motion to dismiss plaintiffs' claim pursuant to 47 USC § 605 for failure to state a cause of action is denied.

■ An officer of an unincorporated association may bring an action for defamation for damage to his reputation. However, if the officer is a "public figure," the defendant will have a qualified privilege and the plaintiff must establish actual malice (*Friends of Animals v Associated Fur Mfrs.*, 46 NY2d 1065 [1979]). The court concludes that NYRA's telecasts of public sporting events render Hayward a public figure. The officials of both NROTB and NYRA could have been more temperate in their comments concerning the unauthorized telecasts. However, in the interest of robust debate on a matter of public interest, absent a showing of actual malice, their statements were not actionable. Since plaintiffs have not made any showing of actual malice, defendants' motion to dismiss plaintiff Hayward's defamation claim for failure to state a cause of action is granted.