Shirley DELGADO, Plaintiff,

v.

**TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,** Defendant.

No. 05 Civ. 8031.

United States District Court, S.D. New York.

April 26, 2007.

Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12112 et seq., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq. Delgado initially brought this case before the New York State Division of Human Rights ("SDHR") on November 1, 2004. The SDHR, in a Determination and Order After Investigation ("SDHR Order"), dated March 29, 2005, found no probable cause to believe TBTA engaged in the alleged discriminatory practice and dismissed Delgado's complaint. Delgado requested review by the Equal Employment Opportunity Commission ("EEOC") on April 7, 2005. The EEOC adopted the findings of the SDHR in a Dismissal and Notice of Rights letter, dated June 16, 2005. Delgado then brought the instant case. TBTA moves to dismiss the complaint pursuant to Federal Rule of Civil 12(b)(6) for failure to state a claim upon which relief may be granted. On February 27, 2007, the Court filed an order dismissing Delgado's claims, and stated that a decision and order would follow to further elaborate on the findings, reasoning, and conclusions supporting the ruling.

Shirley Delgado, Bronx, NY, pro se.

John Griscom Epstein, New York City, NY, for defendant.

### DECISION AND ORDER

MARRERO, District Judge.

Pro se plaintiff Shirley Delgado ("Delgado") brought this action against her employer, the Triborough Bridge and Tunnel Authority ("TBTA"), alleging unlawful discrimination and retaliation on the grounds of race, gender, national origin, and disability in violation of Title VII of the Civil

### I. BACKGROUND [1]

### A. TITLE VII ALLEGATIONS

Delgado works as a Technical Scheduling and Support Specialist in TBTA's Chief of Staff Division of the Operations Department ("CSD"). On October 9, 2001, Delgado filed an internal complaint with Gloria Colon ("Colon"), Chief Equal Employment Opportunity Officer, alleging that her direct superior, John Barile

---

1. The following factual summary is based on the parties' submission to the Court, specifically: Plaintiff's Complaint, dated Sept. 15, 2005 ("Compl."); Defendant's Answer, dated Dec. 2, 2004 ("Answer"); and Plaintiff's Reply, dated Feb. 7, 2005 ("Pl.'s Reply"). Except where specifically quoted, no further reference to these documents will be made.

("Barile"), had sexually harassed her and created a hostile work environment. Following an investigation by Colon, Barile was transferred, returned to a previously held civil service title of Lieutenant, and given a reduction in pay.

Following the events of September 11, 2001, the CSD began reorganizing. As part of that reorganization, all CSD employees were asked to fill out a Managerial Position Questionnaire ("MPQ") which lists the current job responsibilities of a TBTA position. A position's title, pay, and responsibilities are determined from an MPQ. Delgado filled out an MPQ in 2003 and emailed it to her supervisor, William Dooley ("Dooley"), Director of the Scheduling Division of CSD.

Delgado claims that, after the transfer of Barile, she received an increased workload without any increase in pay or title. Delgado also asserts that several extra duties were added to her job without a corresponding change in the position's MPQ. On February 12, 2004, Delgado submitted a second internal complaint to Dooley stating that she believed that the lack of proportionality between her workload and her benefits was due either to retaliation for her October 9, 2001 internal complaint or to her national origin, as a Hispanic.

Dooley scheduled a meeting with Delgado on February 27, 2004 to review her complaint. Delgado arrived at Dooley's office for the meeting but was surprised to find Karen Bowers ("Bowers"), Manager of Scheduling and Training, in the office. Dooley began to question Delgado about her complaint, but she stopped the meeting because she was uncomfortable with Bowers's presence. She requested that the meeting be postponed until either Colon or Tim Baker ("Baker"), Chief of Staff

of the Operations Department, could be available. On March 5, 2004, a new meeting between Delgado, Baker, and Dooley was held. Delgado claims that in this meeting she was informed by Baker that her internal complaint, dated February 12, 2004, would adversely affect her chances of being promoted.

On October 20, 2004, Dooley requested that Delgado review an MPQ of her position. Delgado claims that the MPQ presented was not the MPQ she filled out in 2003. Instead, she claims that it was from 1998, prior to her employment and before significant changes in her position. Delgado also claims that she attempted to have the MPQ changed, but that all of her appointments to do so were canceled by Baker and she was not allowed to discuss the matter with TBTA'S human resources staff. On November 4, 2004, Delgado met with Baker and Dooley to sign an MPQ for her position. Delgado asserts that she was again confronted with the 1998 MPQ and asked to sign it. Delgado also asserts that the only changes Baker and Dooley allowed her to make before she signed the MPQ were in her title and other minor modifications.

## B. ADA ALLEGATIONS

On January 25, 2003, Delgado was diagnosed with a Left Sublenticular Cyst which was allegedly causing her headaches, blurred vision, and dizziness. Her doctor recommended that she avoid prolonged use of computers. A note indicating this recommendation was filed with TBTA. On February 5, 2003, Delgado was treated for a herniated disk. In a note to TBTA, her doctor restricted Delgado from any heavy lifting or pulling and excused her from one day of work. Delgado was also treated for a right ankle sprain on May 27, 2003.

TBTA began replacing its old computer monitors with new 17–inch flat screen monitors in 2003.[2] Delgado discussed with TBTA that a decrease in size from her then current 19–inch monitor would not be large enough for her work and might aggravate the symptoms of her cyst. Delgado provided a note from her doctor on July 1, 2004, requesting that she be allowed to keep her 19–inch monitor to reduce the impact of eyestrain and aggravation of her migraines. In August of 2004, a new 19–inch flat screen monitor for Delgado was requested, but was delayed because it was back-ordered. The new monitor arrived and was installed in September of 2004.

## II. *DISCUSSION*

### A. *DISCRIMINATION UNDER THE ADA*

 Delgado claims that TBTA discriminated against her because she is disabled. Delgado bears the initial burden of establishing a prima facie case of employment discrimination due to disability under the ADA. *See Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998). To meet this burden she must show that: (1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *See Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 198 (2d Cir. 2004). The second and fourth prong, disability under the ADA and an adverse employment action because of disability, are at issue in this case.

2. Delgado asserts that the replacement program began in 2003. (Pl.'s Reply at 12). TBTA instead asserts that the program began in May of 2004. (Answer at 4). The Court

### 1. *Disability Within the Meaning of the ADA*

In order to show a disability within the meaning of the ADA, Delgado must demonstrate: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (b) a record of such impairment; or (c) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2); *see also Schaefer v. State Ins. Fund,* 207 F.3d 139, 142 (2d Cir.2000).

The ADA does not define "impairment", "major life activities", or "substantial limitation". However, the Second Circuit has relied on the non-binding EEOC regulations under the ADA in interpreting the meanings of the terms. *See Ryan,* 135 F.3d at 870. Both the EEOC regulations and a plain understanding of the term "impairment" make it clear that Delgado's migrane/brain cyst, herniated disk, and right ankle sprain qualify as impairments. *See* 29 C.F.R § 1630.2(h)(1) ("Physical ... impairment means: ... Any physiological disorder, or condition ... affecting one or more of the following body systems: neurological, musculoskeletal, [or] special sense organs...."). TBTA does not appear to argue differently. Delgado's allegations do not neatly fall into the EEOC regulations' definition of major life activity, but "working" and "seeing" are listed as two examples, which effectively encompass Delgado's claims. *See* 29 C.F.R § 1630.2(I). Although it may be obvious that Delgado's impairments affect her major life activities, she must plead that those activities have been substantially impaired in order for her to be considered disabled. *See Ryan,* 135 F.3d at 870. Substantial limitation is defined as being:

does not find this difference to be material for the purposes of resolving this motion, and accepts the version most favorable to the complainant.

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R § 1630.2(j)(1).

The regulations further state that the following factors should be considered in determining whether Delgado is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R § 1630.2(j)(2).

■ Delgado has not put forward sufficient information for any of these factors to weigh in her favor. Although Delgado describes the nature of her impairments, there is inadequate pleading as to their severity, duration, or impact *See Capobianco v. City of New York*, 422 F.3d 47, 59 (2d Cir.2005)(finding that a jury could have found substantial impairment where the plaintiff pled that "the impairment severely limits [his] ability to see at night or in dim light; the impairment cannot be corrected by surgery, glasses, contact lenses, or other optical means; and the impact is permanent"). Delgado's documentation consists of notes from her doctor to TBTA which describe only that Delgado gets headaches that impair her vision and that she was in "a significant amount" of pain immediately after her sprain. (*See* Pl.'s

Reply, Ex "C", "D"). While these statements come closer to more adequately describing the nature and severity of Delgado's impairments, there are still no facts describing how long the impairments she asserts are projected to last, nor do the facts describe the permanence of the impact of the impairments. Due to the insufficiency of Delgado's complaint in this area, the Court finds that she has not pled that she is disabled under the meaning of the ADA.

### 2. *Adverse Employment Action Because of Disability*

■ Even if Delgado were determined to be disabled under the meaning of the ADA, she still must plead an adverse employment action taken by reason of her disability. The only action which can be construed from Delgado's allegations as an adverse one due to her disability is the delay, because of the supplier's back-orders, in providing her accommodation by means of a newer or larger computer monitor. The submissions of both parties show that Delgado was allowed to retain her larger monitor when a smaller one was scheduled to replace it. The submissions further show that Delgado eventually received a larger monitor than many of her co-workers and both of her supervisors. The new monitor was ordered one month after Delgado provided the doctor's note indicating that she required a large monitor. Because the monitor was back-ordered, it was delivered and installed two months after Delgado provided that note. The Court does not find these circumstances sufficient to plead a lack of accommodation by TBTA.

### B. *RETALIATION UNDER TITLE VII*

■ Delgado claims that TBTA retaliated against her in violation of Title VII because of her October 9, 2001 internal

complaint. To establish a prima facie case of retaliation under Title VII, Delgado must demonstrate that: (1) she was engaged in an activity protected under Title VII; (2) the employer was aware of her participation in the protected activity; (3) the employer took adverse action against her; and (4) a causal connection existed between her protected activity and the adverse action taken by the employer. *See Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir.2003). TBTA concedes that the first two elements of the prima face case were established when Delgado filed her first internal complaint and the TBTA reassigned Barile in response. Delgado must demonstrate the third and fourth elements to establish a prima facie case.

### 1. *Adverse Action* [3]

 To establish the third element of a retaliation claim—an adverse action—Delgado must show a materially adverse change in the terms, privileges, duration, or conditions of her employment. *See Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997). This Circuit has held that materially adverse changes include termination, demotion evidenced by decrease in wage or salary, a less distinguished title, loss of benefits, or diminished responsibilities. *See Galabya*, 202 F.3d at 640. However, not every unpleasant matter short of discharge or demotion constitutes an adverse action under Title VII. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997). To be materially adverse, a change in Delgado's terms or conditions of employment must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya*, 202 F.3d at 640. Delgado claims an increased workload and alterations of her job responsibilities.

 While an increased workload is considered only a mere alteration of job responsibilities, a workload heavily disproportionate to those similarly situated has been held to be an example of an adverse action. *See Feingold v. New York*, 366 F.3d 138, 153 (2d Cir.2004). However, Delgado has not pled any facts that demonstrate that her workload is heavily disproportionate to anyone in her department. In fact, Delgado's pleadings make several references to the increased workload assumed by her entire section. (*See, e.g.*, Pl.'s Reply at 7 ("Ms. Torresi and I have had numerous meetings with Mr. Dooley expressing our dissatisfaction regarding our workload and lack of appropriate compensation.")). Delgado's claims of being assigned an increased workload, without increase in pay or title, amount to an ordinary alteration of job responsibilities rather than an adverse action in the absence of more information or allegations informing the Court of the context of the asserted work increase. *See Uddin v. City of New York*, 427 F.Supp.2d 414, 429 (S.D.N.Y.2006)(finding no adverse action where all employees were subjected to the same relocation and loss of a personal phone).

### 2. *Causal Connection*

 In order to establish the fourth element of her retaliation claim—a causal connection between an adverse employment action and a protected activity—Delgado must demonstrate that the allegedly adverse actions occurred in circumstances from which retaliatory intent can reasonably be inferred. *See Gordon v.*

---

**3.** Many of the cases cited in this section revolve around claims under the Age Discrimination in Employment Act (ADEA). However, Title VII and ADEA claims are analyzed under the same legal framework. *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 n. 2 (2d Cir.2000).

*New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir.2000). Delgado may demonstrate retaliatory intent either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." *Id.* Although a close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse action is enough by itself to establish a connection, the temporal proximity must be sufficiently close. *See Clark County School Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

 Delgado has not adequately pled causation due to temporal proximity. Delgado's allegations of retaliation by TBTA appear to take place almost three years after her October 9, 2001 internal complaint. Delgado's complaint appears to indicate an increase of work over this time period, but she does not provide any dates or specific allegations between October 9, 2001 and February 12, 2004. Three years does not amount to a "very close" temporal proximity. *See id.,* 532 U.S. at 273–74, 121 S.Ct. 1508 (finding that twenty months is insufficient for causation, and relying on cases that hold three and four months also insufficient). In order to use temporal causation as the sole demonstration of causation Delgado must give specific dates of retaliatory actions in the three year period.

 Disproportionate treatment is also not pled sufficiently by Delgado to show causation in this case. As noted above, Delgado states that others in her department were also subject to an increased workload. (*See* Pl.'s Reply at 7). Additionally, Delgado's pleadings demonstrate that others among her co-workers similarly felt that their benefits were not proportionate to their altered working conditions. (*See id.* at 9).

 Finally, Delgado does not show a causal connection directly through proof of retaliatory animus. Delgado claims that Baker stated that her actions could adversely affect her ability to be promoted. (*See id.* at 7). However, Baker's comment occurred after most, if not all, of the alleged retaliatory actions that Delgado asserts. The comment was made with regard to Delgado's February 12, 2004 internal complaint which was more than three years after the protected action at issue here. This comment does not rise to the level of a retaliatory animus for TBTA actions prior to February 12, 2004. *See Wright v. Stern,* 450 F.Supp.2d 335, 374 (S.D.N.Y.2006) (finding direct evidence where plaintiff alleged supervisors said they frowned upon complaining and asked plaintiff not to file a lawsuit); *Watson v. O'Neill,* 365 F.3d 609, 613 (8th Cir.2004)(finding direct evidence where supervisor allegedly commented that plaintiff would never excel because of engaging in protected behavior); *Fabela v. Socorro Independent School Dist.,* 329 F.3d 409, 416 (finding direct evidence where employer terminated plaintiff for being difficult, but cited the filing of an EEOC complaint as evidence of plaintiff's difficult nature).

## C. *RACIAL DISCRIMINATION UNDER TITLE VII*

 Delgado's final claim against TBTA asserts racial discrimination under Title VII. To establish a Title VII claim of racial discrimination, Delgado must show that (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment ac-

tion occurred under circumstances giving rise to an inference of discriminatory intent. *See Collins v. New York City Transit Auth.,* 305 F.3d 113, 118 (2d Cir.2002). TBTA concedes the first two elements of Delgado's prima facie case.

 In order to survive a motion to dismiss, Delgado must specifically allege events claimed to demonstrate intentional discrimination as well as circumstances giving rise to a reasonable inference of racially discriminatory intent. *See Yusuf v. Vassar College,* 35 F.3d 709, 713 (2d. Cir.1994). A complaint consisting only of assertions, setting forth no specific facts upon which a court could find a plausible violation of Title VII, must be dismissed for failure to state a claim under Rule 12(b)(6). *See id.*

 Delgado's entire complaint of racial discrimination consists of several stray sentences. (*See* Compl. at 7; Pl.'s Reply at 9, 13–14). Specifically, Delgado asserts that there was favoritism toward Caucasians in her department, that a white employee received a new computer monitor before her, and that several white employees had been promoted while several minority employees had not. *See id.* While these allegations, if true, may indicate that an adverse action occurred, Delgado must plead more specific events to show intentional discrimination. Without more detailed claims, descriptions of events, or circumstances surrounding the alleged discrimination, this Court must dismiss a claim of racial discrimination under Title VII. In particular, Delgado must plead circumstances leading to a permissi-

ble inference of racial discrimination including: ethnically degrading terms, invidious comments about her protected group, or sufficient factual assertions that employees not in her protected group were favored. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). Additionally, to demonstrate that employees not in her protected group were favored, Delgado must plead facts showing she was similarly situated in all material respects to the individuals with whom she seeks to compare herself. *See Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir.2000).

## D. RESCISSION OF VACATION TIME [4]

 Delgado also claims that her "previously approved vacation has been rescinded because [she] is currently on FMLA". (Compl. at 5). To show a that she was punished for exercising her rights under the FMLA, Delgado would have had to show that: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered and adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *See Potenza v. City of New York,* 365 F.3d 165, 168 (2d Cir. 2004).

 The substance of Delgado's entire FMLA claim is found in the above quoted sentence. Delgado's pleading would satisfy the first prong since she alleges that she exercised her rights under FMLA. TBTA

---

4. TBTA argues that Delgado's FMLA claim is barred because she did not exhaust her remedies in the EEOC. While it is not readily apparent that Delgado brought this issue before the EEOC, a close reading of her pleadings before the SDHR, which were adopted by the EEOC, show that she declined to pursue FMLA time because of her fear of mis-

treatment. (*See* Pl.'s Reply at 2.) While this is not the exact claim she brings before the court today, it is closely related to her previous disability claims. *See Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003). The closely related standard of *Deravin* in combination with the lower pleading standard for pro se complainants, allows this claim in this court.

does not directly confront the FMLA claim, but has conceded that Delgado is qualified for her position, satisfying the second prong. Delgado also satisfies the third prong, an adverse action, due to the allegation of a loss of benefits through recision of her vacation time. However, Delgado fails to give any information that would allow for a finding of retaliatory intent. While Delgado does allude to the FMLA in her pleadings before the SHDR, she does not appear to plead enough facts, specific events, or circumstances to show that the rescission of vacation time occurred in retaliation for invoking her FMLA rights. Delgado thus fails to make a prima facie case of retaliation under the FMLA.

## III. *CONCLUSION*

With regard to the Title VII and FMLA claims, the Court finds that Delgado's complaint does not plead facts sufficient to demonstrate that she suffered an adverse employment action or retaliation under circumstances giving rise to a reasonable inference that the alleged wrongful conduct was motivated by unlawful discrimination on the grounds of race, gender, or national origin. As to Delgado's ADA claim, the pleadings are insufficient to allege a disability within the meaning of the ADA or that the TBTA failed to provide a reasonable accommodation even if Delgado had a qualifying disability. Recognizing Delgado's pro se status, the Court will grant leave to replead.

Accordingly, it is hereby

**ORDERED** that the Court's Order dated February 27, 2007 is amended to incorporate the discussion set forth above; and it is further

**ORDERED** that the motion (Docket No. 7) of defendant Triborough Bridge and Tunnel Authority to dismiss the complaint of plaintiff Shirley Delgado ("Delgado")

herein is GRANTED, without prejudice to Delgado's filing, within thirty (30) days of the date of the Order, an amended complaint in accordance with the Court's discussion herein.

The Clerk of Court is directed to close this case.

**SO ORDERED.**