Sean JOHNSON, Plaintiff–Appellant,

v.

CH ENERGY GROUP, INC.,
Defendant–Appellee.

No. 09–0459–cv.

United States Court of Appeals,
Second Circuit.

Nov. 17, 2009.

Michael Howard Sussman, Sussman &
Watkins, Goshen, NY, for Appellant.

Joseph A. Saccomano, Jr., Jackson Lewis LLP, White Plains, N.Y. (Susanne Kantor, on the brief), for Appellee.

Present: JON O. NEWMAN, ROSEMARY S. POOLER and ROBERT A. KATZMANN, Circuit Judges.

## SUMMARY ORDER

Sean Johnson ("Johnson") appeals from the final judgment of the District Court for the Southern District of New York granting summary judgement for appellee CH Energy Groups, Inc. ("CHG & E"). We assume the parties' familiarity with the facts, proceedings below, and the specification of the issues on appeal.

Johnson began his employment at CHG & E in 1990 and was hired in February, 1993 as a full-time employee. The terms of Johnson's employment with CHG & E are defined in a collective bargaining agreement negotiated between the International Brotherhood of Electrical Workers, Local 320 and CHG & E ("CBA").

In 2001, Johnson completed the required examination and was promoted to the position of Lineman Third Class. In March, 2005, Johnson attempted the examination to proceed to become a Lineman First Class, which consists of both a written and a practical component. Johnson was required by the CBA to wait a period of eighteen months, so that he might pursue additional training opportunities, before he could attempt the examination again. During this period, Johnson was transferred to CHG & E's Kingston branch.

Johnson alleges that he was subjected to a series of incidents involving racial discrimination. When he first started as a Lineman, Johnson, who is African American, claims that he found a photograph of a black Lineman from Con Edison (a competitor firm) and on another occasion, a black woman, taped to his locker. He says that one of his colleagues called him "Boy" and "Willis." Johnson further alleged that a photograph of all of the lineman in the Kingston branch had been taped to his locker, and that his picture had been colored black.

While he was employed at the Kingston branch, Johnson argues that another employee of a similar level at CHG & E said that Johnson had "snowed" everyone at Kingston and that he could "see right through him." On another occasion, in October 2005, Johnson gave Wayne Rice, his supervisor, a length of rope as part of a work-related task. Johnson claims Rice threw it back at him, and said "maybe [he would] make a noose." Thomas Brocks, a Vice–President of Human Resources at CHG & E, contacted Johnson after the noose incident and encouraged Brocks to inform him if he heard any other racial comments. Johnson also alleges that Dave Warren, one of his supervisors, was dismissive of him and critical of his work in front of his coworkers.

On February 16, 2006, Johnson again attempted the examination to become a First Class Lineman. Johnson achieved nearly a perfect score on the written examination. He did not, however, receive a passing score on the practical component, and was, pursuant to the CBA, denied the promotion and demoted to the position of Meter Reader. The four proctors of the practical examination, Jay Deyo, Michael Lennon, Robert Elliott and Warren, agreed that Johnson had not shown the competence or the fluidity during the examination necessary to be a First Class Lineman. Two of the proctors, Deyo and Warren, claimed that they saw Johnson remove his rubber glove during the examination, which they say contributed to the failing score that he received. On the other hand, the two other proctors, Elliot and Lennon, later said that they did not

see Johnson remove the glove. Johnson claims that he did not remove the glove during the practical examination.

The same day that Johnson attempted the examination, two other employees, John Schueren, and Scott Parker, completed the First Class Lineman examination for a second time. Schueren, who is Caucasian, and Parker, who is African American, received passing scores.

On February 21, 2006, Johnson met with Brocks, Heather Still, the Labor Relations Administrator for CHG & E, and Union President Frank Maher to discuss the results of the examination. Johnson explained that he had heard he failed the examination, because he had removed his glove, and suggested Warren and Deyo had lied about his having removed the glove. After the meeting, Brocks designated Barry Bloom, the Director of Corporate Compliance, to lead an investigation into Johnson's allegations of racial discrimination. Bloom concluded that there was no evidence that the decision was racially motivated.

Johnson alleged in his complaint that he was denied a promotion and subsequently demoted on the basis of his race in violation of 42 U.S.C. § 1981 and New York State Executive Law, § 296. The district court concluded that Johnson had failed to establish a prima facie case of discrimination under section 1981. In the alternative, the court found that CHG & E had articulated a nondiscriminatory justification for the employment decision, and that Johnson failed to provide evidence of discriminatory pretext. The court declined to exercise supplemental jurisdiction over Johnson's state law claims.

This Court reviews a district court's grant of summary judgment de novo, and it applies the same standards that guided the district court in granting summary judgment. *O'Shea v. First Manhattan Co.*

*Thrift Plan & Trust,* 55 F.3d 109, 111 (2d Cir.1995). "In deciding a motion for summary judgment," this Court has instructed, "the district court is not to resolve issues of fact but only to determine whether there is a genuine triable issue as to a material fact. In making that determination, the court is required to resolve all ambiguities, and to credit all factual inferences that could rationally be drawn, in favor of the party against whom summary judgment is sought." *Howley v. Town of Stratford,* 217 F.3d 141, 150–51 (2d Cir. 2000). A genuine issue of material fact "arises if the evidence would allow a reasonable jury to return a verdict for the non-moving party." *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988).

To establish a claim under 42 U.S.C. § 1981, a plaintiff must show that "(1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981." *Lauture v. Int'l Bus. Mach. Corp.,* 216 F.3d 258, 261 (2d Cir.2000).

This Court has recognized that "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 . . ." *Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir. 2004). In both the Title VII context and with respect to section 1981 claims, this Court applies the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Martin v. Citibank, N.A.,* 762 F.2d 212, 216–17 (2d Cir.1985).

Under *McDonnell Douglas,* a plaintiff "must establish, by a preponderance of the

evidence ... (1) that [he] falls within the protected group, (2) that plaintiff applied for a position for which he was qualified, (3) that [he] was subject to an adverse employment decision and (4) that the adverse employment decision was made under circumstances giving rise to an inference of unlawful discrimination." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir.2001) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817).

When the plaintiff has established a prima facie case, the employer may defeat a rebuttable presumption of discrimination by "articulating a legitimate, non-discriminatory reason for the employment decision." *Byrnie*, 243 F.3d at 102. Finally, if the employer offers such a reason, which would allow a reasonable trier of fact to conclude that no discrimination occurred, the burden-shifting framework "disappears and the sole remaining issue is discrimination vel non." *Id.* (internal quotation marks and citations omitted). "The burden upon the plaintiff to prove a prima facie case is minimal." *Id.*

Applying the *McDonnell Douglas* standard, at step one, there is no debate that Johnson is an African American and that he suffered an adverse employment action in that he failed to receive a promotion and was subsequently, and consistent with company policy, demoted to the position of Meter Reader. *Byrnie*, 243 F.3d at 101. The next inquiry focuses on whether or not Johnson was adequately qualified for the position. *Id.* The district court assumed that Johnson was qualified for the position, and we assume the same. *Id.*

■ Taking the facts in the light most favorable to Johnson, the noose incident, combined with the incidents he alleges occurred involving his photograph, we find he meets his minimal burden to set out a prima facie case of discrimination. *Id.*;

*Dawson v. Bumble and Bumble,* 398 F.3d 211, 216 (2d Cir.2005).

At the fifth step under *McDonnell Douglas,* we must consider whether the district court erred by resolving a question of fact as to whether Johnson removed his rubber glove during the examination. Johnson's removal of the rubber glove featured prominently in the proctors' decision to deny him a promotion. It was the first explanation provided to him regarding the employment decision, and it was also the only objective factor—in contrast to the subjective criteria of "fluidity" or "continuity"—that the proctors cited as relevant to their decision.

In *Reeves v. Sanderson Plumbing Products Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court considered the extent of the evidence necessary for the district court to reject an employer's nondiscriminatory basis for an employment decision. The Court found that "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation," and that "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination...." *Id.* at 146–47, 120 S.Ct. 2097. Such evidence, the Court found, "may be quite persuasive." *Id.* at 147, 120 S.Ct. 2097.

■ The question of whether Johnson removed his glove is the type of factual dispute that *Reeves* instructs should be sent to a jury. "Whether judgment as a matter of law is appropriate will depend on a number of factors .... includ[ing] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be consid-

ered on a motion for judgement as a matter of law." *Id.* at 148–49, 120 S.Ct. 2097. *See Schnabel v. Abramson,* 232 F.3d 83, 89 (2d Cir.2000) (finding *Reeves* applies to a motion for summary judgment).

A consideration of these factors support the view that the district court's grant of summary judgment was in error. *See Byrnie,* 243 F.3d at 101. First, Johnson's history of discrimination at CHG & E, including the noose incident and the harassment he experienced when his photograph was colored black and photographs of African Americans were placed on his locker, add strength to his prima facie case of race discrimination. Second, the proctors' disagreement about whether or not Johnson had removed the glove, along with his history of disagreement with one of the proctors, Dave Warren, provides reason to question the explanation the employer has proffered for the employment decision.

A consideration of these factors might lead a reasonable trier of fact to conclude that Johnson's termination decision was motivated by race. We conclude, therefore, that the district court incorrectly granted summary judgment on Johnson's claims under section 1981 and vacate and remand the matter to the district court.

It is not necessary to conduct a separate analysis of the state law claims, because the relevant standards under New York Executive Law § 296 mirror those for a section 1981 claim. *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir.2007). In any event, the district court declined to exercise supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction"). Since we conclude that the district court erred in dismissing the action, we also remand for

consideration of the claims under the New York Executive Law.

For the reasons stated above, the judgment of the district court is **VACATED AND REMANDED.**