**ONOFRE POLANCO, Plaintiff,**

v.

**34TH STREET PARTNERSHIP, INC., Defendant.**

No. 08 Civ. 11063(VM).

United States District Court, S.D. New York.

July 2, 2010.

Antoinette L. Williams, Antoinette L. Williams, P.C., Pelham, NY, for Plaintiffs.

Bertrand B. Pogrebin, Littler Mendelson, P.C., New York, NY, Cassaundra Lynette Manning Lisa Michelle Brauner, Littler Mendelson, P.C., New York, NY, for Defendant.

## DECISION AND AMENDED ORDER

VICTOR MARRERO, District Judge.

Plaintiff Onofre Polanco ("Polanco") brings this employment discrimination lawsuit against 34th Street Partnership, Inc. (the "Partnership") under 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, 296(1)(a) ("NYSHRL"). He alleges various adverse changes to his working conditions, a hostile work environment, retaliation and constructive discharge.

The Partnership filed a motion for summary judgment to which Polanco did not file timely opposition. By Order dated June 30, 2010, the Court granted the Partnership's motion and indicated that its findings, reasoning and conclusion would be stated in a separate Decision and Order. Accordingly, for the reasons detailed below, the Partnership's motion for summary judgment is GRANTED.

## I. BACKGROUND [1]

The Partnership is an amalgamation of various New York City individuals, busi-

---

1. As Polanco did not file a timely opposition to the Partnership's motion, all facts con-

nesses, and city officials that have pooled resources to pay for supplementary sanitation services in midtown Manhattan. Polanco, who was born in the Dominican Republic, is a Hispanic male who worked for the Partnership as a street cleaner from March 6, 1992, until resigning on July 10, 2007.

At the time Polanco left the Partnership, it employed sixty-one street cleaners and one porter, of whom 30% were Hispanic, 37% black, and 24% Moroccan. The Partnership regularly hired workers who did not speak English, and eleven of the Partnership's workers at the time of Polanco's resignation spoke no English and six spoke only a little English. When Polanco was interviewed by the Partnership, he spoke Spanish and was provided an interpreter by the Partnership. The Partnership also provided Spanish translation of work-related communications for Polanco and other Spanish-speaking employees. Polanco testified that he was occasionally told to speak English at work.

Supervisors of the Partnership's street cleaners assign cleaners on a daily basis to each route that the Partnership services. Street cleaners are expected to pick up litter, empty trash cans, and perform other sanitation duties along their route. A route's length is determined by the density of trash to be picked up and the amount of pedestrian traffic on the route. When a cleaner reaches the end of a route, he or she must return to the route's beginning and cleaning the route again.

Polanco was regularly assigned different routes for at least the first six years of his employment at the Partnership. After this time, he was consistently assigned a route known as Route 2, which was shorter than some other routes but had a higher density of pedestrians and garbage. In 2006, Polanco's supervisors became aware that Route 2 was not being as well maintained as it had been in the past. Polanco's supervisor spoke with Polanco about the problems on Route 2 and asked if Polanco would agree to be assigned to another route. Polanco agreed and on July 24, 2006, Polanco was no longer assigned Route 2. After Polanco was no longer regularly assigned Route 2, both Hispanic and non-Hispanic cleaners were assigned to it.

Prior to the change of his regular assignment of Route 2, Polanco was issued a letter of warning on January 23, 2006, for being late to work. About two weeks later, he was sent home from work on February 6, 2006, after a supervisor found him on an unauthorized break eating in a restaurant at 8:45 a.m. when Polanco was supposed to be working. Other Partnership employees have received similar or harsher discipline, including non-Hispanic employees. For example, a black employee was suspended on June 9, 2007, for refusing to use the appropriate broom.

On April 9, 2007, Polanco injured his back while emptying a garbage can. Emptying garbage cans is a normal part of a street cleaner's job at the Partnership.

The only complaint of discrimination that Polanco provided to the Partnership was on August 8, 2002, when he sent a letter to the director of the Partnership's sanitation department. The letter noted that Polanco had not been allowed to use the bathroom while at work and had urinated on himself. The letter also ex-

---

tained in the Partnership's Rule 56.1 statement of undisputed material facts filed with its motion for summary judgment are deemed admitted for the purposes of the motion. *See* Local Civ. R. 56.2(c). The Court's factual summary is drawn from the Rule 56.1 statement, which the Court has cross-referenced with the record to ensure the accuracy of each representation. No further citation to these sources will be made.

plained that a supervisor had thrown a shovel at Polanco after Polanco refused to clean snow from grass. The Partnership's deputy director of sanitation replied to the letter and held a meeting with Polanco, a union representative, and a Spanish interpreter. Polanco made no further complaints to the Partnership until submitting his resignation in July 2007, which gave eight days notice. A few days before he resigned, Polanco told a colleague that he intended to sue the Partnership, but refused to discuss with the Partnership changes to his employment status that would allow Polanco to remain working.

Three months before resigning, Polanco filed a charge with the Equal Employment Opportunity Commission ("EEOC") on April 13, 2007. The EEOC issued Polanco a right to sue letter on September 25, 2008. Polanco filed this action on December 19, 2008. Polanco was one of two plaintiffs in the original action; the other was another Partnership employee, Victor Vergara, who voluntarily dismissed his claims with prejudice on March 9, 2010.

By endorsed letter dated February 11, 2010, the Partnership was given until April 12, 2010, to file a motion for summary judgment. The deadline for filing the motion was extended to April 19, 2010, with Polanco's response due May 19, 2010. On May 17, 2010, Polanco requested and was granted an extension of time to May 28, 2010 in which file a response. On that occasion the Court's memo-endorsed Order dated May 18, 2010, stated that "no further extensions will be considered." No response was submitted by May 28, 2010. Polanco filed a response on June 28, 2010, but the Court denied his request for permission to file it untimely, thus deeming the Partnership's motion unopposed.

## II. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994).

"Even when a motion for summary judgment is unopposed," as is the case here, "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co. v. 1–800–BEAR-GRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Rather, "[w]here the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" *Id.* (*quoting Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir.2001)). If the movant's submitted evidence fails to meet the burden of production, "then 'summary judgment must be denied even if no opposing evidentiary matter is presented.'" *Id.* (*quoting Amaker*, 274 F.3d at 681.)

 In reviewing and evaluating the evidence in support of an unopposed motion for summary judgment, the movant's Rule 56.1 statement is "an important guide." *Shark v. City of New York*, No. 03 Civ. 2616, 2008 WL 4444112, at *3 (S.D.N.Y. Sept. 29, 2008) (*citing Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290 (2d Cir.2008)). However, the Court is mindful that "a Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record," *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132–33 (2d Cir.2008), and the Court thus "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vermont Teddy Bear Co.*, 373 F.3d at 244. But "unless specifically controverted," a statement of material facts "will be deemed to be admitted for the purposes of the motion." Local Civ. R. 56.2(c) (emphases removed). *See also Vermont Teddy Bear Co.*, 373 F.3d at 246.[2]

### III. *DISCUSSION*

Polanco brings employment discrimination claims under Title VII, § 1981, and NYSHRL alleging that the Partnership treated him poorly because of his race and national origin as a Hispanic from the Dominican Republic.[3] These three laws all follow essentially the same legal framework. *See, e.g., Johnson v. CH Energy Group, Inc.*, 353 Fed.Appx. 543, 545–546 (2d Cir.2009) ("core substantive standards" of Title VII apply to § 1981 discrimination claims); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n. 1 (2d Cir.2000) (standards "identical" to Title VII apply to NYSHRL discrimination claims). Polanco's allegations can be grouped into four categories when applied to the facts: (1) disparate treatment, (2) hostile work environment, (3) retaliation, and (4) constructive discharge. Each of these four modes will be addressed in turn, but the Court is persuaded that the Partnership has sufficiently carried its burden of production showing that no genuine issues of material fact exist as to Polanco's claims.[4]

### A. *DISPARATE TREATMENT*

 To establish a case of race or national origin discrimination, Polanco must show that (1) he falls within a protected group, (2) he was qualified for his position, (3) he was subject to an adverse employment decision and (4) that the adverse employment decision was made under circumstances giving rise to an inference of unlawful discrimination. *See Johnson*, 353 Fed.Appx. at 545 (citations omitted). If a plaintiff makes out this prima facie case,

---

**2.** The Court also notes that it is not taking the more extreme course of dismissing Polanco's lawsuit outright for failure to comply with the Court's scheduling order. *Vermont Teddy Bear* suggested that such a sanction was appropriate under Federal Rule of Civil Procedure 16(f) where the plaintiff was, unlike this case, acting *pro se. See* 373 F.3d at 247.

**3.** Though Polanco's complaint indicates in its "Preliminary Statement" that he is also bringing claims under the New York City Human Rights Law, the New York City law is not mentioned again in the complaint and no cause of action is specifically alleged under the New York City law. *See* Complaint, filed December 19, 2008.

**4.** In evaluating the Partnership's summary judgment motion, the Court will only consider allegations of discrimination that occurred four years before Polanco filed the complaint on December 19, 2008, as this is the earliest period of time before any of the applicable statute of limitations applies. *See* 28 U.S.C. § 1658(a) (describing four years limitations period); *Jones v. R.R. Donnelley*, 541 U.S. 369, 371, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) (applying § 1658 to § 1981 actions).

"the employer may defeat a rebuttable presumption of discrimination by articulating a legitimate, non-discriminatory reason for the employment decision." *Id.* at 546 (citation and quotation marks omitted). The Partnership does not contest that Polanco has satisfied the first two prongs of this test.

### 1. *Route Change*

■ Polanco claims that being assigned from Route 2 to another route was an adverse employment action that was done only because of Polanco's race or national origin.

The Court finds that the Partnership has presented compelling evidence that a change in routes is not an adverse employment action. The routes assigned by the Partnership are of roughly equal character—a route is shorter in length if it takes longer to complete cleaning it, but a worker is not allowed to stop servicing a route if he finishes before a shift is over. Polanco may not have been as satisfied with his new route as with his old one, but "not every unpleasant matter short of discharge or demotion constitutes an adverse action under Title VII." *Delgado v. Triborough Bridge and Tunnel Auth.,* 485 F.Supp.2d 453, 461 (S.D.N.Y.2007) (citation and quotation marks omitted). Changes to Polanco's route assignment did not equate to giving him a new disproportionate workload or a reduction in his responsibilities. *Id.* (noting that in the Second Circuit "materially adverse changes include termination, demotion evidenced by decrease in wage or salary, a less distinguished title, loss of benefits, or diminished responsibilities.")

■ The Court is also persuaded that the route change did not occur in circumstances giving rise to an inference of discrimination. Polanco's preferred route was sometimes assigned to Hispanics and Polanco's route was changed only after complaints about its cleanliness and *after* Polanco himself agreed to a new assignment.

### 2. *Disciplinary Actions*

■ Polanco alleged that he was given an unjustified warning and unfairly suspended due to his race or national origin. Because the statutes of limitations in this case disqualifies any events that occurred before December 15, 2004, there are only two disciplinary actions that the Court can consider in its analysis of Polanco's claim. The first is a warning issued on January 23, 2006, for Polanco's tardiness. The other is a one-day suspension that was imposed on February 6, 2006, for Polanco's taking an unscheduled break. The Court is not persuaded that either a written warning with no discernible employment consequences or a single day of suspension for a sufficiently justifiable reason amounts to a materially adverse employment action. *See Delgado,* 485 F.Supp.2d at 461.

The Court further finds that the disciplinary actions did not occur in a manner that gives rise to an inference of discrimination. Polanco did not dispute that he was late, and, aside from a cursory assertion that he had permission for the break from the same supervisor who suspended him, does not seriously contest the grounds for the suspension. Further, the Partnership disciplined non-Hispanic workers in a similar fashion, and suspended a black street cleaner in June 2007 for refusing to carry the proper broom.

### 3. *Assignment of New Tasks*

■ In his complaint, Polanco alleges that he sustained an injury in April 2007 after being told to lift heavy boxes, a task that was not a usual part of his job duties but was instead imposed on him by alleg-

edly racially-motivated supervisors. But during the course of discovery, it was revealed that this injury occurred while Polanco was lifting garbage bags—*i.e.*, it happened in the normal course of his duties. As the injury occurred during the course of Polanco's normal responsibilities, the Court finds that this incident presents no materially adverse employment action.

### 4. *Work During Breaks*

Polanco has also alleged that he was forced to work during breaks, but this allegation has not developed beyond a mere conclusory allegation and no details supporting it are in the record currently before the Court.

### B. *HOSTILE WORK ENVIRONMENT*

■■■■ addition to disparate treatment, Title VII is also violated when a "workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 546–47 (2d Cir.2010) (emphases removed) (citations and quotation marks omitted). A work environment must be both subjectively and objectively permeated with hostile or abusive behavior to be cognizable under Title VII, and "[i]solated incidents generally will not suffice to establish a hostile work environment unless they are extraordinarily severe." *Id.* at 547 (citations and quotation marks omitted). In sum, "Title VII does not set forth a general civility code for the American workplace." *Id.* at 546 (citations and quotation marks omitted).

### 1. *"English Only" Policy*

■■■ Polanco alleged that the Partnership imposed an "English only" rule on its workers. Polanco, who does not speak English, would presumably have been severely impacted by such a rule but the record indicates that the Partnership instead fully accommodated him by providing interpreters when needed to communicate with supervisors or to understand work-related material and has employed several other workers who do not speak English. Additionally, at deposition Polanco could only provide vague details of occasionally being told of this alleged policy during the limitations period, and the Court is not persuaded that, in the context of an employer which routinely hired workers it knew were not English speakers and kept them employed, that occasional instances of being told to speak English amounts to sufficiently severe or pervasive discrimination to sustain a hostile work environment claim.[5]

### 2. *Other Hostile Work Environment Claims*

■■■ Polanco's other allegations of a hostile work environment—*e.g.*, that his supervisors hovered over him while he was working or made him perform unnecessarily repetitive and menial tasks such as returning to a route to pick up a single cigarette butt—are unsupported in the record currently before the Court. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

**5.** To the extent that Polanco alleged a disparate impact claim based on this policy, the Court finds that Polanco cannot sustain a disparate impact claim because there is no evidence that the Partnership actually instituted such a policy.

## C. *RETALIATION*

 To succeed on his retaliation claim, Polanco must first establish a prima facie case of retaliation. *See Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir.2010). To do so, he must show (1) that he engaged in protected activity, (2) that the Partnership was aware of this activity, (3) that the Partnership took adverse action against him, and (4) that a causal connection exists between the protected activity and the adverse action. *See id.* If he establishes these elements, "then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory." *Id.* If the employer carries this burden, "then the presumption of retaliation dissipates and the plaintiff must show that retaliation was a substantial reason for the complained-of action." *Id.*

 The record does not support Polanco's contention that his route change or being given other vague additional tasks was as a result of his attempts to raise issues about discrimination in the workplace with his superiors. Polanco's route was not changed until July 2006 and the last documented complaint he raised with the Partnership was a letter dated August 8, 2002. In addition to finding that the route change was not an adverse action, the Court finds that the passage of almost four years between a complaint and alleged retaliatory behavior severs any causal connection between the two events. *See Stoddard v. Eastman Kodak Co.*, 309 Fed. Appx. 475, 480 (2d Cir.2009) (rejecting retaliation claim premised on temporal proximity between protected activity and retaliation where protected activity occurred two months prior to alleged retaliation).

## D. *CONSTRUCTIVE DISCHARGE*

 Constructive discharge occurs only when an "employer deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir.1993) (citation and quotation marks omitted).

 the Court's discussion above that the changes in Polanco's work responsibilities do not constitute materially adverse change, the Court finds that Polanco was not constructively discharged. Further, Polanco waited approximately a year to resign after the route change, provided eight days notice of his resignation, and refused to discuss with the Partnership changes in his working conditions that might allow him to continue working. *See Eichler v. American Intern. Group, Inc.*, No. 05 Civ. 5167, 2007 WL 963279, at *18 (S.D.N.Y. Mar. 30, 2007) (considering that employee gave two weeks notice of resignation as a factor in finding that the employee was not constructively discharged).

## IV. *ORDER*

Accordingly, it is hereby

**ORDERED** that the Court's Order dated June 30, 2010, granting the motion of defendant 34th Street Partnership, Inc., (the "Partnership") for summary judgment is amended to incorporate the discussion above; and it is finally

**ORDERED** that the Partnership's motion for summary judgment (Docket No. 35) is GRANTED.

The Clerk of Court is directed to terminate all pending motions and to close this case.

**SO ORDERED.**