McKinley v Eastchester Union Free Sch. Dist. (2024 NY Slip Op 51588(U))

[*1]

McKinley v Eastchester Union Free Sch. Dist.

2024 NY Slip Op 51588(U)

Decided on November 20, 2024

Supreme Court, Westchester County

Giacomo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 20, 2024
Supreme Court, Westchester County

Shakirra McKinley, Plaintiff,

against
Eastchester Union Free School District and RONALD VALENTI, Defendants.

Index No. 61475/2024

Attorney for Plaintiff: 
Mark Dumas, Esq. 
Brandon J. Broderick, LLC
11 Broadway, Suite 615
New York, New York 10004
(646) 481 - 1170
Attorney for Defendants: 
Stan Sharovskiy, Esq. 
Silverman & Associates
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
(914) 574-4510

William J. Giacomo, J.

In this action alleging discrimination and retaliation in violation of the New York State Human Rights Law (NYSHRL), defendants Eastchester Union Free School District (School District) and Ronald Valenti (Valenti) (collectively, defendants), move, pre answer, pursuant to 3211 (a) (2) and (7), to dismiss plaintiff Shakirra McKinley's complaint. 
Papers Considered NYSCEF DOC NO. 8-16
1. Notice of Motion/Affirmation in Support by Stan Sharovskiy, Esq./ Exhibit A/Memorandum of Law
2. Memorandum of Law in Opposition
3. Memorandum of Law in Reply
FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff commenced this action by filing a summons and verified complaint on April 30, 2024. The relevant facts are taken from the plaintiff's complaint, and are accepted as true for purposes of this motion. The complaint alleges that it "arises out of the wrongful termination of [*2]a single, Black mother in a city and school district riddled with issues involving racism and racial discrimination." Plaintiff was hired by the Eastchester Union Free School District for the position of guidance counselor beginning with the 2021-2022 school year. Valenti was, at all relevant times, the Interim Superintendent, who had the "ability to affect the terms and conditions" of plaintiff's employment. The complaint alleges that plaintiff "had a very successful first year with the School District," and received positive ratings. However, "all of that changed after she advised the School District that she was pregnant in August 2022." On August 2, 2022, plaintiff advised defendant's employees that she was pregnant and began the process of requesting FMLA and pregnancy leave. Shortly after, plaintiff "noticed that the attitude of administrators towards her employment immediately changed." For instance, she received a letter of supervision from the Principal on October 17, 2022. This letter "initiated a series of conversations, meetings, and correspondence regarding Ms. McKinley's alleged performance deficiencies even though she received glowing reviews prior to communicating her pregnancy to the School District." 
Plaintiff commenced her maternity leave in November 2022. She received a letter of counsel from the Assistant Superintendent on December 22, 2022, despite being on leave. Plaintiff then made a complaint with the Department of Labor regarding the defendant's interference with her protected family medical leave related to her pregnancy and the defendant removed the letter from her file. After plaintiff returned to work in January, 2023, the principal "continued to target" plaintiff for exercising her rights to leave related to her pregnancy. Plaintiff complained to the administration that she believed she was being discriminated and retaliated against on the basis of her pregnancy. 
Plaintiff then received another letter of supervision dated April 25, 2023, which recommended terminating her on that date. The school district ultimately terminated plaintiff on June 30, 2023. Plaintiff alleged that she was "shocked that she was terminated and similarly situated employees who were not Black, pregnant women during the 2022-2023 school year were treated more favorably than [plaintiff]." 
Plaintiff alleges that "[a]mid the School District's discrimination and retaliation against Ms. McKinley, parents accused the Superintendent, Mr. Valenti, of making racist comments during an online PTA meeting where he said that students might find it useful to learn Spanish so that they can talk to their gardeners and gas station attendants. Mr. Valenti issued a written statement apologizing for those comments on February 2, 2023." She further alleges that "[p]arents also complained about a performance at Eastchester High School where students performed in blackface. The School District took no action against the students because the School District determined that the students did not intend to be racially insensitive." 
Plaintiff states that she was forced to relocate to Maryland at great financial cost, as a result of her wrongful termination. 
In the first cause of action, plaintiff alleges that defendants discriminated against her in the terms and conditions of her employment by subjecting her to a hostile work environment, by terminating her and by failing to investigate her claims of discrimination, on the basis of race, gender, familial status and marital status, in violation of the NYSHRL. She asserts that she has been treated less well than other employees because of her protected status. 
The second cause of action alleges that defendants retaliated against plaintiff, in violation of the NYSHRL. The complaint states that plaintiff engaged in a protected activity by complaining to the Department of Labor, Human Resources and supervisors about the hostile [*3]work environment and discrimination directed against her by defendants. However, instead of investigating these claims, plaintiff was terminated. 
In the third cause of action, plaintiff alleges that Valenti aided and abetted discrimination and retaliation in violation of the NYSHRL. The fourth and fifth causes of action allege that defendants violated Labor Law § 215 when they terminated her, in part, in retaliation for her protected complaints. The complaint alleges "Whistleblower Retaliation," and "Lawful Absence." Plaintiff's complaint is seeking monetary relief and the equitable relief of reinstatement. 
Plaintiff filed a notice of claim on September 11, 2023 against the Eastchester Union Free School District. The notice of claim provided that the claim "arose on June 30, 2023, when the Eastchester Union Free School District caused McKinley's employment to be terminated as a result of pregnancy discrimination and retaliation in violation of the New York State Human Rights Law, NY Exec. Law §§ 290 to 301 (the 'NYSHRL')." Further, the nature of the claim is for monetary damages for injuries suffered by plaintiff "a result of the discrimination and unlawful termination of McKinley by the Eastchester Union Free School District."[FN1]

Instant Motion
Defendants move to dismiss the complaint pursuant to CPLR 3211 (a) (2) and (7). In essence, defendants argue that no specific allegations are pled to establish an inference of discrimination. Plaintiff only alleges that similarly situated employees of different protected classes were treated more favorably. Defendants argue that, based on combining of several different protected classes, they are unable to determine which comparator she is referring to. Regardless, plaintiff has not even identified one comparator, nor has she identified any allegations of being subjected to direct verbal comments or insults on the basis of a protected category. 
Defendants further argue that plaintiff failed to demonstrate any of their actions were motivated by a discriminatory animus. For example, plaintiff does not allege that the assistant superintendent knew that she was pregnant when he issued the disciplinary letter. Defendants argue that claims alleged against Valenti must be dismissed, as plaintiff does not identify any affirmative act taken by Valenti, or any omission on his part, which contributed to any discriminatory conduct. For example, plaintiff does not identify which administrator she lodged a complaint with. In addition, the incidents cited by plaintiff as being racially insensitive had nothing to do with plaintiff or her termination. 
Defendants assert that any claims made alleging discrimination on the basis of race and marital status must be dismissed on the procedural grounds that only pregnancy was cited in the notice of claim. Defendants add that the claims must also be dismissed as against Valenti also on procedural grounds as Valenti is not included in the notice of claim. 
Defendants argue that plaintiff's retaliation claims must be dismissed as plaintiff failed to allege that she engaged in a protected activity, plaintiff failed to name any specific supervisors to whom she complained and plaintiff failed to allege a causal connection between the protected activity and the purported retaliatory conduct.
Finally, defendants argue that retaliation claims pursuant to Labor Law § 215 must fail, as the notice of claim did not allege any violation of the New York Labor Law. In any event, defendants argue that plaintiff fails to allege a causal connection between the complaints and her termination.
In opposition, plaintiff argues that she has met the modest threshold of establishing an inference of discrimination by addressing employment actions taken immediately after plaintiff announced her pregnancy. Further, according to plaintiff, she has alleged that she was treated less favorably than similarly situated non-African American employees by citing statistics that she was the only Black or African American teacher in the School District. Plaintiff claims that she has sufficiently alleged that she was subjected to a hostile work environment because she was subject to discipline after announcing her pregnancy and because the complaint alleged a discriminatory animus permeating the school district. Plaintiff also argues that her notice of claim is sufficient to provide defendants with information to conduct a proper investigation. 
Regarding the retaliation claims, plaintiff argues that her complaints to Human Resources and to the Department of Labor constitute protected activity and that the temporal proximity between the complaints and her termination support an inference of retaliatory intent. Finally, plaintiff alleges that the complaint should not be dismissed as against Valenti, as Valenti was aware of the discriminatory actions but failed to take corrective measures. 
DISCUSSION
Dismissal
"Upon a motion to dismiss pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the sole criterion is whether the subject pleading states a cause of action, and if, from the four corners of the complaint, factual allegations are discerned which, taken together, manifest any cause of action cognizable at law, then the motion will fail." Esposito v Noto, 90 AD3d 825, 825 (2d Dept 2011) (internal quotation marks and citations omitted). The court must afford the pleading a liberal construction, accept the facts alleged in the pleading as true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory. Id. "Whether the complaint will later survive a motion for summary judgment, or whether the plaintiff will ultimately be able to prove its claims, of course, plays no part in the determination of a prediscovery CPLR 3211 motion to dismiss." Endless Ocean, LLC v Twomey, Latham, Shea, Kelley, Dubin & Quartararo, 113 AD3d 587, 589 (2d Dept 2014).
In addition, on a motion to dismiss, employment discrimination cases are "generally reviewed under notice pleading standards . . . . [I]t has been held that a plaintiff alleging employment discrimination 'need not plead [specific facts establishing] a prima facie case of discrimination' but need only give 'fair notice' of the nature of the claim and its grounds." Vig v New York Hairspray Co., L.P., 67 AD3d 140, 145 (1st Dept 2009) (internal citation omitted). 
Notice of Claim Requirements and Valenti
In general, pursuant to Education Law § 3813 (1), prior to maintaining an action against a School District, a plaintiff must file a notice of claim within three months of the accrual of the claim. See e.g. Parochial Bus Sys. v Board of Educ. of City of NY, 60 NY2d 539, 547 (1983) ("Satisfaction of these [notice of claim] requirements is a condition precedent to bringing an action against a school district or a board of education . . ."); See Education Law § 3813 (1) (notice of claim required for claims "against any school district, board of education, board of cooperative educational services, school [or] . . . any officer of a school district, board of [*4]education, board of cooperative educational services, or school"). There are exceptions to the notice of claim requirement when the relief sought is equitable in nature or when the litigant "commences a proceeding to vindicate a public interest." Matter of Fotopoulos v Board of Fire Commrs. of the Hicksville Fire Dist., 161 AD3d 733, 734 (2d Dept 2018).
The Appellate Division, Second Department, has consistently dismissed complaints alleging violations of the NYSHRL brought against school districts when the plaintiff failed to file a notice of claim. See e.g. Seifullah v City of New York, 161 AD3d 1206, 1206 (2d Dept 2018) (internal quotation marks and citation omitted) (Plaintiff was not excused from the notice of claim requirement as "Education Law § 3813 (1) broadly requires the filing of a notice of claim as a condition precedent to an action . . . for any cause whatever, which includes the plaintiff's causes of action pursuant to the New York State Human Rights Law"); see also Munro v Ossining Union Free School Dist., 55 AD3d 697, 698 (2d Dept 2008) (claimant seeking to commence an action against a school district for violations of the Human Rights Law must file a notice of claim within three months of the claim's accrual). 
Case law establishes that "[s]uperintendents qualify as officers upon whom a notice of claim must be filed, but principals do not." Collins v City of New York, 156 F Supp 3d 448, 460 (SD NY 2016). Plaintiff's notice of claim, directed at the Eastchester Union Free School District, alleges that her claim arose on June 30, 2023 when she was terminated as a result of discrimination and retaliation in violation of the NYSHRL. She is seeking monetary damages. It is undisputed that the notice of claim did not include Valenti as a defendant, nor was Valenti mentioned anywhere in the notice of claim's contentions.
Accordingly, on this procedural basis, alone, the complaint is dismissed as against Valenti.
Discrimination Claims under the NYSHRL
Pursuant to the NYSHRL, as set forth in Executive Law § 296 (1) (a), it is an unlawful discriminatory practice for an employer to refuse to hire or employ, or to fire or to discriminate against an individual in the terms, conditions or privileges of employment because of the individual's race, marital status, sex and familial status, among other protected categories. Although pregnancy is not explicitly listed in the statute, "discrimination on the basis of a woman's pregnancy . . . constitutes discrimination on the basis of sex [under the NYSHRL]." Wilcox v Cornell Univ., 986 F Supp 2d 281, 285 (SD NY 2013) (internal quotation marks and citation omitted). The NYSHRL provides the "same sort of protection" for pregnancy as Title VII. Quaratino v Tiffany & Co., 71 F3d 58, 63 (2d Cir 1995). Under the NYSHRL, familial status is defined as "any person who is pregnant or has a child or is in the process of securing legal custody of any individual who has not attained the age of eighteen years." Executive Law §292 (26) (a). 
"A plaintiff alleging discrimination in violation of the NYSHRL must establish that (1) he or she is a member of a protected class, (2) he or she was qualified to hold the position, (3) he or she suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Bilitch v New York City Health & Hosps. Corp., 194 AD3d 999, 1001 (2d Dept 2021).
To plead an actionable hostile work environment under the NYSHRL, plaintiff must allege that she was subjected "to inferior terms, conditions or privileges of employment" because of the individual's membership in one or more . . . protected categories." Executive Law 296 § (h) (1).
At the outset, the complaint alleges that defendants discriminated against plaintiff on the basis of gender, race, familial status and marital status. Plaintiff makes broad allegations that she was the lone African American teacher in the School District at the time and that she was terminated "because she dared to be a pregnant, unmarried, Black women [sic] in a school district that speaks for itself." However, plaintiff's notice of claim only put the School District on notice of potential claims grounded in discrimination/retaliation on the basis of pregnancy. "In order to have actual knowledge of the essential facts constituting the claim, the public corporation must have knowledge of the facts that underlie the legal theory or theories on which liability is predicated in the notice of claim; the public corporation need not have specific notice of the theory or theories themselves." Matter of Felice v Eastport/South Manor Cent. School Dist., 50 AD3d 138, 148 (2d Dept 2008). Here, there was no way for the School District to anticipate plaintiff's claims that she was discriminated on the basis of other protected categories and investigate the broad allegations that she was "treated less well than other employees because her protected status." On this basis alone, any claims outside of the ones alleging pregnancy discrimination/retaliation should be dismissed. 
However, even, assuming arguendo, that the notice of claim encompassed all possible protected categories, plaintiff is still unable to sufficiently plead a claim for discrimination. As set forth below, other than asserting that she was a member of protected classes, "the complaint failed to allege circumstances . . . giving rise to an inference of discrimination on the basis of [her protected characteristics]." Acala v Mintz, Levin Cohn Ferris Glovsky & Popeo, P.C., 222 AD3d 706, 707-708 (2d Dept 2023). 
Plaintiff alleges that she is a member of a protected class, that she was qualified to hold her position, as evidenced by the satisfactory performance in the year prior to her termination. She alleges that, in addition to being terminated, she was subjected to the adverse action of being issued a letter of supervision shortly after requesting maternity leave, and that this action, as well as the termination, occurred under the circumstances giving rise to an inference of discrimination. 
To be actionable under the NYSHRL, the adverse employment action must be "a materially adverse change in the terms and conditions of employment." Golston-Green v City of New York, 184 AD3d 24, 37 (2d Dept 2020) (internal quotation marks and citation omitted). "Such change must be more disruptive than a mere inconvenience or an alteration of job responsibilities, such as a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." Id. (internal quotation marks and citation omitted). Accordingly, plaintiff fails to sufficiently plead a claim for discrimination based on receiving a disciplinary letter because this is not a materially adverse employment action under the NYSHRL. 
Even if the disciplinary letter could be considered an adverse action, there is also no indication, beyond plaintiff's speculation, that the letter was motivated by a discriminatory animus. "Notwithstanding the broad pleading standard, bare legal conclusions with no factual specificity do not suffice to withstand a motion to dismiss." Mid-Hudson Val. Fed. Credit Union v Quartararo & Lois, LLC, 155 AD3d 1218, 1219 (3d Dept 2017), affd 31 NY3d 1090, 1091 (2018).
Turning again to the fourth element of a NYSHRL discrimination claim, plaintiff argues that she has established that her termination occurred under circumstances giving rise to an inference of discrimination because defendants allegedly employed one African-American [*5]teacher in the School District at the time, Valenti made racially insensitive comments at a PTA meeting, parents complained about a performance at the High School where the students performed in blackface, and because she was treated less well than other employees who were not in her protected classes. See Mazzeo v Mnuchin, 751 Fed Appx 13, 14 (2d Cir 2018) (internal quotation marks and citation omitted) ("Discriminatory motivation may be inferred from, among other things, invidious comments about others in the employee's protected group, or the more favorable treatment of employees not in the protected group").
Invidious Comments
Plaintiff provides two unrelated examples where defendants were accused of being racially insensitive. However, the Court finds that any alleged comments identified by plaintiff fail to raise an inference of discriminatory animus as the only allegedly derogatory remarks were not made to plaintiff, do not reference plaintiff, plaintiff's termination or even plaintiff's protected characteristics. See e.g. Matter of Tenenbein v New York City Dept. of Educ., 178 AD3d 510, 511 (1st Dept 2019) (Petitioner failed to state a claim under the New York Human Rights Laws as he "fails to show that any conduct or comments by respondent's staff members were based on his alleged learning disability. The comments made by staff members did not reference his disability"). Courts have routinely dismissed complaints with similarly conclusory allegations. See e.g. Delgado v. Triborough Bridge and Tunnel Authority, 485 F Supp 2d 453, 463 (SD NY 2007) (Plaintiff "must plead circumstances leading to a permissible inference of racial discrimination including: ethnically degrading terms, invidious comments about her protected group, or sufficient factual assertions that employees not in her protected group were favored"). 
Disparate Treatment
Plaintiff claims that she was disciplined and terminated on the basis of being an unmarried, pregnant, African-American woman. Courts have recognized that discrimination complaints may be characterized as "sex-plus" or "gender-plus." See e.g. Back v Hastings on Hudson Union Free Sch. Dist., 365 F3d 107, 118 n 7 (2d Cir 2004) (internal quotation marks and citation omitted) (Courts have recognized caretaker status discrimination claims on the basis of race-plus-gender-plus caregiver status. "In such cases the employer does not discriminate against the class of men of women as a whole but rather treats differently a subclass of men or women"); see also Manzolillo v Cooke, 438 F Supp 2d 311, 313 (SD NY 2006) ("Such complaints are actionable under the rubric of 'sex-plus' discrimination: discrimination against some but not all women based on their gender 'plus' an additional characteristic such as appearance, pregnancy, marital status, or age"). 
However, regardless of how the complaint is characterized, it is unclear who plaintiff is identifying as a comparator to support her disparate treatment claims. Plaintiff has not identified any employees who are outside of her protected classes who were treated in a different manner. See e.g. Acala v Mintz, Levin Cohn Ferris Glovsky & Popeo, P.C., 222 AD3d at 708 ("Moreover, the plaintiff failed to allege acts sufficient to establish that similarly situated persons who did not share her national origin or alleged disabilities were treated more favorably than she").
The complaint states that plaintiff was the only African-American teacher in the School District during the 2021-2022 school year. "Hence, without some other evidence of anti-[African-American] bias, it is unreasonable to infer that any actions taken against [her] were motivated by discriminatory animus, since, by definition, [she] will always be the only [African-[*6]American] impacted by any employment action directed at [her]." Pelepelin v City of New York, 189 AD3d 450, 451 (1st Dept 2020). In addition, Courts have found that a "[a] racial imbalance in the makeup of a workplace is insufficient, by itself, to demonstrate discrimination." Santiago v Axis Specialty U.S. Servs., 2021 US Dist LEXIS 28598, *24 (SD NY 2021) (internal quotation marks and citation omitted). 
Finally, it appears that plaintiff also argues as evidence the temporal proximity between her request for maternity leave and her termination. However, plaintiff alleges that she advised defendants of her pregnancy in August 2022 and was then terminated in June 2023. Courts have held that 10 months is too long a passage of time to establish a causal connection. See e.g. Brown v City of New York, 188 AD3d 518, 519 (1st Dept 2020) ("This passage of time is too long to establish any causal connection between any decisionmaker's knowledge of his cancer or medical leave and plaintiff's discharge to raise an inference of discrimination"). 
Plaintiff also appears to be alleging that she was subjected to a hostile work environment because she received a disciplinary letter while on maternity leave and because the defendants allegedly failed to investigate her claims. However, plaintiff failed to plead that defendant's actions were predicated on any discriminatory animus or that she was subjected to "inferior terms, conditions or privileges of employment" because of her protected characteristics. See Whitfield-Ortiz v Department of Educ. of City of NY, 116 AD3d 580, 581 (1st Dept 2014) ("[p]laintiff also failed to adequately plead discriminatory animus, which is fatal to her both her discrimination and hostile environment claims"); see also Acala v Mintz, Levin Cohn Ferris Glovsky & Popeo, P.C., 222 AD3d at 708 ("the conclusory allegations in the complaint were insufficient to state a cause of action alleging hostile work environment"). 
It is well settled that perceptions of being stereotyped are "insufficient to raise an inference of discrimination" on a motion to dismiss. Williams v Time Warner, Inc., 2010 US Dist LEXIS 20916, *11 (SD NY 2010), affd 440 F Appx 7 (2d Cir 2011). Accordingly, here, plaintiff's subjective belief that she was being discriminated against, without any factual allegations, is insufficient to satisfy the pleading standard. 
In light of above, defendants' motion to dismiss plaintiff's cause of action alleging discrimination is granted. 
Retaliation in Violation of the NYSHRL
Under the NYSHRL, it is unlawful to retaliate or discriminate against someone because he or she opposed discriminatory practices. Executive Law § 296 (7). For a plaintiff to successfully make out a prima facie claim of retaliation under the NYSHRL, he/she must demonstrate that: "(1) he/she has engaged in a protected activity, (2) his/her employer was aware of such activity, (3) he/she suffered an adverse employment action based upon the activity, and (4) a causal connection exists between the protected activity and the adverse action." Harrington v City of New York, 157 AD3d 582, 585 (1st Dept 2018). 
Under the NYSHRL, "an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination. . . . [and] covers a broader range of conduct than does the adverse-action standard for claims of discrimination . . . ." Vega v Hempstead Union Free Sch. Dist., 801 F 3d 72, 90 (2d Cir 2015) (internal quotation marks and citation omitted). The standards for evaluating retaliation claims are identical under Title VII and the NYSHRL. See e.g. Kelly v Howard I. Shapiro & Assoc. Consulting Engrs., P.C., 716 F3d 10, 14 (2d Cir 2013) ("[t]he standards for evaluating hostile work environment and retaliation claims are identical under Title VII and NYSHRL"). 
"Protected activity" refers to "actions taken to protest or oppose statutorily prohibited discrimination." Aspilaire v Wyeth Pharmaceuticals, Inc., 612 F Supp 2d 289, 308 (SD NY 2009); see also Pezhman v City of New York, 47 AD3d 493, 494 (1st Dept 2008) ("[C]omplaining of conduct other than unlawful discrimination is not a protected activity subject to a retaliation claim under the State and City Human Rights Laws").
Plaintiff, through the complaint, alleges that she received a disciplinary letter in October 2022. She also received a letter of counsel in December 2022, while she was on maternity leave. She then made a complaint to the Department of Labor regarding the school district's "interference with her protected family medical leave related to her pregnancy." After plaintiff's return to work in January, she made repeated complaints to the School District Administration that she believed she was being retaliated against and discriminated against due to her pregnancy. Plaintiff received a letter of supervision on April 25, 2023, recommending her termination on that same date. She was ultimately terminated on June 30, 2023.
Plaintiff alleges that she made complaints to the Department of Labor, Human Resources, and other staff, about discrimination directed at her. However, it is unclear if her complaints are protected activity, as she does not provide any concrete dates, names of people she complained to, or the actual substance of her complaints. Moreover, the complaint made to the Department of Labor consisted of complaints related to "interference" with her pregnancy leave, as she received a disciplinary letter while on leave. Assuming, arguendo, that the Department of Labor complaint, and even the other complaints asserted in January 2023 could be considered protected activity, plaintiff fails to show a causal connection between this activity, allegedly occurring in January 2023, and her termination, which occurred approximately six months later. 
There is no "bright line" for the time line that defines a causal relationship. Ragin v East Ramapo Cent. Sch. Dist., 2010 US Dist LEXIS 32576, *82 (SD NY 2009), affd 417 Fed Appx 81 (2d Cir 2011). However, this Court finds that six months is too attenuated to establish a causal relationship between plaintiff's complaint and her termination. See e.g. Yarde v Good Samaritan Hosp., 360 F Supp 2d 552, 562 (SDNY 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation . . . [s]ix months between protected activity and discharge is well beyond the time frame for inferring retaliatory causation").
In addition, plaintiff alleges that she performed satisfactorily in the 2021-2022 school year. However, plaintiff first received a disciplinary letter, which she believed to be unfounded, in November 2022, which is prior to her complaint filed with the Department of Labor. It is well settled that "an employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct"). Melman v Montefiore Med Ctr., 98 AD3d 107, 129 (1st Dept 2012). As a result, there is still no causal connection between the protected activity and the retaliatory act of termination. 
Accordingly, plaintiff cannot set forth a viable claim for retaliation under the NYSHRL.
Valenti/Aiding and Abetting Claims
Even assuming, arguendo, that the notice of claim requirement did not apply to Valenti, plaintiff's complaint would still be dismissed against him. Although plaintiff's causes of action are alleged against the School District and Valenti, together, the "State HRL does not render employees liable as individual employers." Doe v Bloomberg, L.P., 36 NY3d 450, 458 (2021). [*7]Individual employees may be held liable under Executive Law § 296 (6), which states that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." 
To state an aiding and abetting claim, plaintiff must allege that an individual defendant "actually participated in the alleged discriminatory acts so as to support her alternative theory of individual liability on the grounds of aiding and abetting the alleged acts." Asabor v Archdiocese of NY, 102 AD3d 524, 529-530 (1st Dept 2013) (internal quotation marks and citations omitted). Here, there are simply no allegations that Valenti participated in any discriminatory or retaliatory conduct against plaintiff or even that he was aware of any of this alleged conduct but failed to take corrective measures. 
Moreover, as there are no valid underlying discrimination or retaliation claims, there can be no basis to impute employer or aiding and abetting liability on Valenti. See e.g. Matter of Medical Express Ambulance Corp. v Kirkland, 79 AD3d 886, 888 (2d Dept 2010) ("Martinez cannot be held liable for aiding and abetting a violation of Executive Law § 296 (1), since there was no cognizable legal basis for holding MEA liable thereunder"). Accordingly, defendants are granted dismissal of the third cause of action. 
Labor Law § 215
In the fourth and fifth causes of action, plaintiff alleges that defendants retaliated against her, in violation of the Labor Law. Specifically, plaintiff allegedly made protected complaints about the discrimination she was subjected to and about her legally protected absence, and was terminated as a result of these complaints, in violation of Labor Law § 215 (a) (i) and Labor Law § 215 (a) (viii). However, claims for purported violations of Labor Law § 215 (a) (i) and Labor Law § 215 (a) (viii) are not included in the notice of claim. As noted, "the service of a timely notice of claim pursuant to Education Law § 3813 (1) is a condition precedent . . . to and failure to comply with this requirement is a fatal defect." Santostefano v Middle Country Cent. Sch. Dist., 156 AD3d 926, 927 (2d Dept 2017) (internal quotation marks omitted). Accordingly, these causes of action are also dismissed, as plaintiff failed to comply with the notice of claim requirements. 
Assuming, arguendo, that plaintiff was solely seeking the equitable relief of reinstatement, which would not require the service of a notice of claim, as set forth below, these causes of action would still be dismissed as insufficiently pled. To establish a claim under Labor Law § 215, plaintiff must plead: "(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Salazar v Bowne Realty Assoc., LLC, 796 F Supp 2d 378, 384 (ED NY 2011).
For the reasons set forth in the NYSHRL retaliation claim, plaintiff has failed to establish a causal connection between her complaints and the allegedly retaliatory actions. See Higueros v New York State Catholic Health Plan, Inc., 527 F Supp 2d 342, 347 (ED NY 2007) ("In addition, New York's anti-retaliation provision requires a nexus between the employee's complaint and the employer's retaliatory action").
Accordingly, defendants are granted dismissal of the fourth and fifth causes of action. 
All other arguments raised on this motion and evidence submitted by the parties in connection thereto have been considered by this court notwithstanding the specific absence of reference thereto.
CONCLUSION
Accordingly, it is hereby
ORDERED that defendants Eastchester Union Free School District and Ronald Valenti's motion seeking dismissing of the complaint is granted; and it is further
ORDERED that plaintiff's complaint is dismissed in its entirety with costs and disbursements to said defendants, as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of said defendants.
Dated: November 20, 2024
White Plains, New York
HON. WILLIAM J. GIACOMO, J.S.C.

Footnotes

Footnote 1:It appears that plaintiff was a probationary employee, as the notice of claim stated that the School District's retaliation culminated in a letter of supervision dated April 25, 2023, and a corresponding recommendation that her employment not be renewed.